Docket No. 99696–Agenda 14–September 2005.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. TOMMY O. HARDIN, Appellant.

Opinion filed December 1, 2005.

JUSTICE FITZGERALD delivered the opinion of the court:

The defendant, Tommy O. Hardin, was represented at trial by an assistant public defender. He was represented in postconviction proceedings by another assistant public defender. His postconviction attorney argued that his trial attorney was ineffective. The sole issue in this case is whether the simple fact that both attorneys were employed by the Du Page County public defender’s office necessitated an inquiry by the circuit court of Du Page County into a potential conflict of interest. The appellate court refused to remand for such an inquiry and affirmed the dismissal of the defendant’s postconviction petition. 353 Ill. App. 3d 522. For the reasons that follow, we affirm.

BACKGROUND

On May 5, 1997, the defendant was indicted on five counts of aggravated criminal sexual abuse. See 720 ILCS 5/12–16(d) (West 1996). The trial court appointed the Du Page County public defender’s office to represent the defendant. Assistant Public Defender Jameson Kunz was assigned the defendant’s case.

The defendant’s complaints with Kunz’s representation began almost immediately. At an October 6, 1997, court date, the defendant reported that Kunz had made “unethical and uncalled for” statements. According to the defendant, Kunz said his job was to “sell me out,” which led the defendant to “look bad on the whole public defender system.” The trial court found that the defendant’s accusation was not credible. The court told the defendant that it was Public Defender Stephen Baker’s decision which attorney would represent him, and the court indicated that it had not heard anything to discredit Kunz’s work. The defendant replied, “I respectfully do not want him as my attorney. I have told him to his face that he was fired. I don’t think he is going to represent me. And I do not have faith in him due to the fact of what was said in our conversations, period.” The trial court stated that Kunz was experienced and competent, but that the defendant had the option of representing himself. The court refused to direct the public defender to reassign the case, and it declined to appoint private counsel. The defendant then warned, “Your honor, it’s just that I feel it will be a conflict due to the fact that I will be filing with the disciplinary commission.” The trial court told the defendant that it would reconsider its decision if he filed a disciplinary complaint and such a conflict arose.

At a September 17, 1998, court date, the defendant asked the trial court to dismiss and replace Kunz. The trial court stated that “there has been nothing to indicate to me that he is incompetent or ineffective in his representation of you. If you are having some type of personality difficulties, that is something that I will not get involved in, and that is something that you have to direct to Mr. Baker.” The court requested that the defendant put his complaints in writing, so Kunz could understand them and relay them to Baker. On September 23, 1998, when the trial court asked if the defendant was continuing to ask for the dismissal of the public defender, the defendant clarified, “This particular one.” The defendant then submitted to the court a handwritten letter, which specified 16 reasons why Kunz was ineffective:

“1. He has made statements in the past that it is his job to sell me out.

2. He has tride [
sic
] to have a pre ple [
sic
] report ordered and he knew I was aposed [
sic
].

3. He knows that I have said that I will not plead out this case, but he has tried to get me to plead out.

4. He has state [
sic
] that if I bring thease [
sic
] points up to you that I will be found incopated [
sic
] for tril [
sic
].

5. Jami has told me that I have no say in what gose [
sic
] on this case.

6. I have told him on severol [
sic
] accounts that this is taking to [
sic
] long.

7. He has asked for some continuances so he could do somthing [
sic
] but never did it.

8. I have object [
sic
] to some of the continuances that he and the State have agreed to and even on record and for example and I was over ruled by you your Honer [
sic
].

9. Jami has made threats that if I cause him problemes [
sic
] that I will get more time.

10. Jami has kept me in the dark on most things.

11. When I asked him to file things he has refused.

12. On some motions that he has filed he wasn’t prepared to argure [
sic
] the motion but the State was.

13. He has been doing the States [
sic
] job for example when I objected to this last contunence [
sic
] he did not argure [
sic
] for me but agreed with the State and argued for them.

14. I’m intitled [
sic
] to counsle [
sic
] that has my best intrsed [
sic
] in minde [
sic
] but I don’t example I was served withe [
sic
] the wornt [
sic
] in the I.D.O.C. at Centrale [
sic
] on or around March 8th 1997 and Jami knew this. But the police officers came and got me on April 25th 1997 my indictment did not come till May 2nd 1997 whe [
sic
] the police officers came and got me it should never have happend [
sic
] my rights to the right of due process for the state to find probable cause with in the alotted [
sic
] amount of time give [
sic
] by law 30 days I told him about this he blew it off.

15. I’ve asked for a compleat [
sic
] copy of the transcripts so that I might use and find the ones that would prove my points in the past but Jami has said he will decide what transcripts that I will get.

Under Artacol [
sic
] 1 Secten [
sic
] 8 of the Illinois State Constitution

16. I have tried to get Jami to file a motion to supress [
sic
] evedens [
sic
] he refuse. I my self [
sic
] asked Judge Dockery who denide [
sic
] it.”

The court scheduled a hearing on the defendant’s allegations.

At an October 5, 1998, court date, Kunz stated that he had discussed this list with Baker, and that Baker saw no basis in the defendant’s charges to reassign the case. The trial court agreed, stating:

“Most of these items, to be perfectly honest, are very vague, and some of them are certainly matters of strategy or legal tactics which do fall within the province of the attorney ***. *** [M]ost *** are items that appear to be some type of a personality conflict between the two individuals ***. And as I indicated to [the defendant] several times, the Court is not going to become involved in any type of issues of personality conflict. My concern is whether there has been ineffective representation by Mr. Kunz of the defendant, and I find nothing raised in these points to show that.”

The court continued the case to allow the defendant time to decide whether to continue with the public defender, to retain a private attorney, or to represent himself.

The next day, the defendant chose none of the above. He could not afford to retain a private attorney, and he explained that he was not qualified to represent himself. He then stated that he “will not work with [Kunz] in any way, shape or form” and that “what he says, he does not say for me. He does not do for me.” The defendant informed the court that he had obtained forms to file a disciplinary complaint against Kunz and added, “I think he will be so prejudiced and retaliate.” The trial court found no basis for a disciplinary complaint, stating that the defendant’s threat of filing one was merely an attempt to circumvent the court’s order denying his motion to substitute counsel. The court reiterated that Kunz would remain as defense counsel until the defendant chose to represent himself.

The defendant continued to be uncooperative, and Kunz expressed to the trial court his concern about the defendant, questioning whether his obstinacy was a conscious decision or a result of a mental-health problem. On November 6, 1998, the trial court held a 
sua sponte
 fitness hearing and found the defendant unfit for trial. The defendant disagreed with this finding. On July 22, 1999, the trial court found the defendant was fit for trial. The defendant then claimed that Kunz had disclosed confidential medical and psychological reports to a doctor whom Kunz had contacted as a possible mitigation witness. The defendant stated that he could not trust Kunz and again asked the court to dismiss and replace him. The court refused to do so.

On December 2, 1999, the defendant again voiced his displeasure with Kunz’s representation, stating to the court, “For your information, your Honor, I am filing a lawsuit against [Kunz] for incompetency, and I want to get rid of him.” The court responded, “Well, you can file whatever suits you want.” The court gave the defendant the choice to continue with Kunz as his attorney or to represent himself. This exchange followed:

“THE COURT: If you file a lawsuit against [Kunz], the case law is clear–I have numerous times indicated that [Kunz] would represent you, and unless the Public Defender’s office changes that–simply filing an ARDC complaint or any type of lawsuit does not–

THE DEFENDANT: I am telling you he is not going to represent me.

THE COURT: Then you are going to represent yourself.

THE DEFENDANT: I am not qualified and neither is he.

THE COURT: The issue is, you are either going to represent yourself or he is going to represent you.

THE DEFENDANT: This is what the situation boils down to, I am being blackmailed into pleading guilty–

THE COURT: No, you are not.”

The case proceeded to a jury trial. A jury convicted the defendant on all five counts of aggravated criminal sexual abuse, and the trial court sentenced him to concurrent 22-year terms of imprisonment. The defendant appealed, and the appellate court affirmed. See 
People v. Hardin
, No. 2–00–0441 (2001) (unpublished order under Supreme Court Rule 23).

On April 9, 2002, the defendant filed a 
pro se
 petition under the Post-Conviction Hearing Act. See 725 ILCS 5/122–1 et seq. (West 2002). The defendant alleged that Kunz was ineffective for two reasons: he failed “to include” evidence of unnamed witnesses’ psychological records, and he breached client confidentiality. The defendant requested postconviction counsel, and the trial court appointed the Du Page County public defender’s office to represent the defendant. Ricky Holman was assigned the defendant’s case.

At a July 8, 2002, court date, Holman informed the trial court that the defendant’s foremost request was to be represented by an attorney outside of the public defender’s office. The court denied that request. On November 26, 2002, Holman filed an amended petition for the defendant in which he fleshed out the defendant’s ineffective assistance of counsel claims and added additional claims. The amended petition alleged that the defendant was denied effective assistance of counsel because Kunz failed to cross-examine two witnesses at trial regarding their psychological histories; failed to introduce the psychological histories of two witnesses who gave victim impact statements at the sentencing hearing; and failed to cross-examine those witnesses at the sentencing hearing. The amended petition further alleged that the trial court erred in refusing to allow Kunz to cross-examine the alleged victims regarding their psychological histories and because it found the defendant unfit. The petition further alleged that Kunz violated the attorney-client privilege when he gave medical records to a Du Page County jail psychologist and, finally, that his sentence violated the proportionate penalties clause. Holman filed a Rule 651(c) certificate along with the amended petition, stating that he had consulted with the defendant about putative violations of his constitutional rights, examined the record and transcripts, and made necessary amendments to the defendant’s 
pro se
 petition. See 134 Ill. 2d R. 651(c).

On November 26, 2002, the trial court found that the amended petition stated the gist of a constitutional claim and ordered the State to file a response. On December 20, 2002, the State filed a motion to dismiss this petition. At a January 28, 2003, court date, Holman informed the court that he had received two letters from the defendant. According to Holman, the defendant “distrusts the [public defender’s] office immensely, and he’s displeased, and [I] thought I’d bring it up once again.” On February 28, 2003, the trial court received a letter from the defendant:

“The reason that I am writing this letter is to make a formail [
sic
] complaint against the Public Defenders Office. I had requested that I be appointed counsle [
sic
] out side [
sic
] of the Public Defenders Office due to the conflict of interest. I was then appointed the Public Defenders Office who then appointed Ricky M. Holman to represent me. This letter is to inform you that he has failed to represent me properly I was told that I would receve [
sic
] copies of every thing filed and ordered. I have not receved [
sic
] anything nor has he kept me informed of anything. I have only receved [
sic
] 1 phone call in June 2002 and 1 letter telling me that I will be in open court to hear the aguments [
sic
]. I don’t know whats [
sic
] going on at all. I wish to be present in court to deal with this problem. I can not have some one [
sic
] represent me who dose [
sic
] not keep me informed or has [
sic
] my best intrust [
sic
] in mind. So I ask the court to appoint counsle [
sic
] outside the Public Defenders Office due to the conflict of interest. I would also like to file for a reduction of time if at all possable [
sic
].”

The trial court acknowledged that it had received this letter, and Holman informed the court that he had recently updated the defendant on the case. The court observed that the defendant “apparently just wants more communication.” Holman repeated, “[E]very time I communicate with him he does not want the public defender to represent him. I’m just making that again as a matter of record.”

On April 11, 2003, at the hearing on the State’s motion to dismiss, Holman addressed some inconsistencies among arguments in the amended petition. Holman explained that the petition was drafted as directed by the defendant:

 “Knowing his background ahead of time, psychological background, and knowing that he does not want the public defender’s office to represent him, either at this stage of the proceedings or at trial stage, *** I followed through with his request and filed each and every paragraph as he insisted that they be brought before the Court. I’d respectfully ask that the Court look at each paragraph individually as it rules on the State’s motion to dismiss.”

The court granted the State’s motion and dismissed the amended petition. 

On appeal, the defendant did not address the merits of his petition; he simply argued that the trial court erred by failing to inquire into whether a conflict of interest arose when Holman attacked Kunz’s effectiveness. The appellate court affirmed. 353 Ill. App. 3d 522. The appellate court initially reviewed 
People v. Banks
, 121 Ill. 2d 36 (1987), where this court stated that a trial court should conduct a case-by-case inquiry into a potential conflict of interest. The defendant argued that the trial court should have made this inquiry when it appointed the public defender’s office to represent him in postconviction proceedings. The appellate court disagreed, stating that the dispositions of the consolidated cases in 
Banks
 showed that a trial court inquiry is not required. 353 Ill. App. 3d at 526. 

The appellate court then relied on 
People v. Spreitzer
, 123 Ill. 2d 1 (1988), and held “a trial court’s duty to investigate arises only if, at an early stage in the proceedings, a defendant presents facts suggesting a conflict that goes beyond the problem of one public defender having to attack another.” 353 Ill. App 3d at 527. The appellate court found that the defendant’s conflict of interest allegation did not trigger this duty. 353 Ill. App. 3d at 528. Though the defendant did use the phrase “conflict of interest” in his letter during postconviction proceedings, he failed to provide any details regarding this putative conflict of interest, other than the fact that his postconviction attorney worked in the same office as his trial attorney. 353 Ill. App. 3d at 528. The appellate court concluded that Holman’s handling of the petition does not suggest that he shied away from pursuing the ineffective assistance of counsel claims. 353 Ill. App. 3d at 528. The defendant’s assertion that Holman was not communicating with him did not show a conflict of interest, but rather the defendant’s “unrealistic expectations.” 353 Ill. App. 3d at 528.

We granted the defendant’s petition for leave to appeal. 177 Ill. 2d R. 315(a).

ANALYSIS

The defendant raises a single issue: whether the trial court should have conducted an inquiry to ensure that there was no conflict of interest between his postconviction public defender and his trial public defender. The defendant essentially claims that Holman may have had a conflict of interest stemming solely from his employment in the same public defender’s office as Kunz, and thus that Holman provided ineffective assistance of counsel. See 
People v. Titone
, 151 Ill. 2d 19, 32 (1992) (treating a conflict of interest argument as an ineffective assistance argument). On this legal question, our review is 
de novo
. 
People v. Morales
, 209 Ill. 2d 340, 345 (2004).

The right to effective assistance of trial counsel comes from the sixth amendment and includes the correlative right to conflict-free representation. See 
Wood v. Georgia
, 450 U.S. 261, 271, 67 L. Ed. 2d 220, 230, 101 S. Ct. 1097, 1103 (1981); 
People v. Washington
, 101 Ill. 2d 104, 109-10 (1984). There is no corresponding constitutional right to effective assistance of postconviction counsel. See 
People v. Pinkonsly
, 207 Ill. 2d 555, 567 (2003). The right to assistance of counsel in postconviction proceedings is a matter of legislative grace, and a defendant is guaranteed only the level of assistance provided by the Post-Conviction Hearing Act. See 
People v. Greer
, 212 Ill. 2d 192, 204 (2004). We have labeled that level “reasonable” assistance. See 
People v. McNeal
, 194 Ill. 2d 135, 142 (2000).

However, when a defendant’s appointed postconviction attorney is called upon to assert that the defendant’s appointed trial attorney was ineffective, the distinction between constitutional and statutory rights makes no difference. If postconviction counsel is appointed to mold the defendant’s allegations into legally cognizable shapes (see 
People v. Owens
, 139 Ill. 2d 351, 365 (1990)), that counsel must be as conflict-free as trial counsel. See generally 
People v. Graham
, 206 Ill. 2d 465, 472 (2003) (“Just as no servant can serve two masters, no attorney can represent conflicting interests”). The right to reasonable assistance of postconviction counsel includes the correlative right to conflict-free representation. See 
Banks
, 121 Ill. 2d 36 (considering, in two consolidated cases, whether appointed postconviction attorneys had conflicts based on their claims of ineffective assistance of appointed trial attorneys). Obviously, like the constitutional right, the statutory right does not include the right to representation by counsel of the defendant’s choosing, or by counsel with whom the defendant has an amicable rapport. 
Cf.
 
People v. DeRossett
, 262 Ill. App. 3d 541, 544 (1994), citing 
People v. Cox
, 22 Ill. 2d 534 (1961); 
People v. Ogurek
, 356 Ill. App. 3d 429, 433 (2005). We turn to the merits.

 In 
People v. Smith
, 37 Ill. 2d 622, 623-24 (1967), we held that a 
per se
 conflict of interest exists when one public defender must question the effectiveness of another public defender in the same office. Twenty years later, we overruled 
Smith
 in 
Banks
, 121 Ill. 2d 36. There, we stated that “it is not clear *** that where an assistant public defender asserts the incompetency of another assistant, the reputation of the whole office is negatively impacted.” 
Banks
, 121 Ill. 2d at 43. Arguably, when one public defender aggressively pursues an ineffective assistance claim against another public defender, the integrity of that office is bolstered. 
Banks
, 121 Ill. 2d at 43. We refused to assume that a public defender would place office loyalty ahead of a client’s interests. 
Banks
, 121 Ill. 2d at 43. Thus, “where an assistant public defender asserts that another assistant from the same office has rendered ineffective assistance, a case-by-case inquiry should be conducted to determine whether any circumstances peculiar to the case indicate the presence of an actual conflict of interest ***.” 
Banks
, 121 Ill. 2d at 44.

The defendant labels this rule “straightforward, clear and unequivocal.” According to the defendant, when his postconviction public defender, Holman, levied ineffective assistance claims against his trial public defender, Kunz, the trial court was required to conduct an inquiry into a possible conflict of interest. The defendant, in effect, reads 
Banks
 to mandate a 
sua sponte
 investigation by the trial court of a possible conflict. We do not believe that 
Banks 
is that broad. If 
Banks
 provides that no 
per se
 conflict of interest exists when one public defender argues that another public defender in the same office was ineffective, it cannot mean the trial court always must open an inquiry into a potential conflict. 

Shortly after we decided 
Banks
, we created a framework for analyzing conflict of interest cases in 
Spreitzer
, 123 Ill. 2d 1. 
Spreitzer
 noted a dichotomy between 
per se
 conflicts–conflicts created by defense counsel’s prior or current association with either the prosecution or the victim–and a second class of alleged conflicts. 
Spreitzer
, 123 Ill. 2d at 16-17. If the defendant shows a 
per se
 conflict of interest, he need not show prejudice resulting from that conflict in order to obtain relief. 
Spreitzer
, 123 Ill. 2d at 15. If the defendant does not show a 
per se 
conflict of interest, the analysis depends upon when he raised the issue. 
Spreitzer
, 123 Ill. 2d at 17-18. Here, 
Spreitzer
 noted another dichotomy: 

“If counsel brings the potential conflict to the attention of the trial court at an early stage, a duty devolves upon the trial court to either appoint separate counsel or to take adequate steps to ascertain whether the risk of conflict was too remote to warrant separate counsel. (
Holloway v. Arkansas
 (1978), 435 U.S. 475, 484, 55 L. Ed. 2d 426, 434, 98 S. Ct. 1173, 1178.) If such steps are not taken, the fact of a ‘
potential
 or 
possible
 conflict may deprive the defendant of the guaranteed assistance of counsel.’ (Emphasis in original.) (
People v. Jones
 (1988), 121 Ill. 2d 21, 28.) While this rule is not 
per se
 ***, reversal of a conviction under this rule does not require a showing that the attorney’s actual performance was in any way affected by the purported conflict. In this sense, reversal for the trial court’s failure to alleviate possible or potential conflicts does not require a showing of ‘specific prejudice.’ 
Holloway
, 435 U.S. at 487, 55 L. Ed. 2d at 436, 98 S. Ct. at 1180.

However, if the trial court is not apprised of the potential conflict, then reversal of the conviction will only be had upon a showing that ‘an actual conflict of interest adversely affected’ counsel’s performance. [
Cuyler v. Sullivan
, 446 U.S. 335, 350, 64 L. Ed. 2d 333, 348, 100 S. Ct. 1708, 1719 (1980).] What this means is that the defendant must point to some specific defect in his counsel’s strategy, tactics, or decision making attributable to the conflict. *** [T]he defendant is never required to prove that his attorney’s deficiencies did not constitute harmless error. He is not required, in other words, to prove that the conflict contributed to his conviction.” 
Spreitzer
, 123 Ill. 2d at 18-19.

Spreitzer
 swallowed the 
Banks
 rule. The trial court must take adequate steps
–i.e.
, conduct
 
“a case-by-case inquiry” per 
Banks
–to determine whether the risk of a conflict colored the defendant’s representation, but only when the potential conflict is brought to court’s attention. Bare allegations of a conflict are not enough. See 
People v. Williams
, 139 Ill. 2d 1, 12 (1990). “In the absence of an evidentiary record of conflict, one should not be created based on mere speculation.” 
Banks
, 121 Ill. 2d at 46-47 (Clark, C.J., specially concurring, joined by Ward, Ryan, and Miller, JJ.). The appellate court here held that “a trial court’s duty to investigate arises only if, at an early stage in the proceedings, a defendant presents facts suggesting a conflict that goes beyond the problem of one public defender having to attack another.” 353 Ill. App. 3d at 527; accord 
People v. Jones
, 210 Ill. App. 3d 375, 378 (1991) (holding that the defendant must provide facts to establish what the conflict was). We agree with the appellate court, but caution that the pleading threshold is low.

In the context of a potential conflict between two public defenders, the conflict issue will normally be raised by the defendant. Consequently, the defendant needs only to present the gist of such a conflict. 
Cf.
 
People v. Edwards
, 197 Ill. 2d 239, 244 (2001), citing 
People v. Gaultney
, 174 Ill. 2d 410, 418 (1996). The defendant must sketch, in limited detail, a picture of how the working relationship between the public defenders created an appearance of impropriety. See 
People v. Moore
, 338 Ill. App. 3d 11, 16 (2003). Relevant factors include whether the two public defenders were trial partners in the defendant’s case (see 
People v. Claybourn
, 221 Ill. App. 3d 1071 (1991); 
People v. Vaughn
, 200 Ill. App. 3d 765 (1990)); whether they were in hierarchical positions where one supervised or was supervised by the other (see 
People v. Munson
, 265 Ill. App. 3d 765 (1994); 
People v. Levesque
, 256 Ill. App. 3d 639 (1993)); or whether the size, structure, and organization of the office in which they worked affected the closeness of any supervision (see 
People v. Blakes
, 131 Ill. App. 3d 1004 (1985); 
People v. South
, 70 Ill. App. 3d 245 (1979)).

Vaughn
 illustrates that the burden placed upon the defendant in this regard is not heavy. In 
Vaughn
, the defendant was represented by a public defender named Viola Rouse. The defendant pleaded guilty to aggravated criminal sexual assault, but a month later filed a 
pro se
 motion to withdraw his plea, alleging that Rouse was ineffective when she counseled him to plead guilty. The trial court appointed another public defender named Steve Helis to represent him on this motion. The defendant requested a Chicago Bar Association lawyer, noting that Rouse and Helis were “ ‘working together.’ ” 
Vaughn
, 200 Ill. App. 3d at 768. The trial court denied this request.

The appellate court remanded for an inquiry into a potential conflict springing from the working relationship between the two public defenders. 
Vaughn
, 200 Ill. App. 3d at 770. The court stated that “defendant’s expressed fear of representation by attorney Helis because he and Rouse were ‘working together,’ however inarticulate, was sufficient, without further factual substantiation by defendant *** to require further inquiry by the trial court as to whether a potential conflict of interest existed.” 
Vaughn
, 200 Ill. App. 3d at 769.

Here, the defendant did not raise a conflict of interest issue in his 
pro se
 postconviction petition, but he alluded to a conflict of interest in his February 28, 2003, letter to the trial court. The defendant stated that he asked the trial court to appoint him an attorney from outside the public defender’s office “due to the conflict of interest.” In this letter the defendant charged that Holman failed to represent him properly in that Holman allegedly did not send him copies of unnamed documents and did not keep him informed of postconviction proceedings.

It is unclear when the defendant made this prior request for private counsel to remedy a conflict of interest, and what conflict the defendant was raising. The defendant made several requests for private counsel before trial, and even threatened to file a disciplinary complaint against Kunz in order to manufacture a conflict that he hoped would force the court to appoint an attorney outside the public defender’s office. Later, he instructed Holman to press his request for private counsel. Assuming that the defendant was referring to a potential conflict between Holman and Kunz, the trial court made a cursory, but sufficient, inquiry. The court noted that it had received the defendant’s letter and that the defendant complained about a “communication breakdown” with Holman. Holman assured the court that he had given the defendant a complete update on the postconviction proceedings and a copy of the State’s answer to the amended petition. Because there was no other information to relay to the defendant, the court added, “Okay and he apparently just wants more communication. There’s no requirement.”

If Holman had been covering for Kunz, the defendant presumably would have complained about Holman’s failure to attack Kunz. The defendant points to nothing in the record to warrant an inquiry into Holman’s diligence. In effect, the defendant asks us to order the trial court to act as his advocate, investigating a nebulous conflict of interest. Holman’s work in the postconviction proceedings was beyond reproach. His Rule 651(c) certificate indicates that he consulted with the defendant and reviewed the record before amending the defendant’s 
pro se
 petition. He refashioned the defendant’s vague constitutional claims into claims that the trial court advanced through the summary dismissal stage. Further, he went to extraordinary lengths to assuage the defendant’s distrust of the public defender’s office by consulting with the defendant on these claims and even how to phrase them. He raised the defendant’s desire for private counsel at numerous court dates, and he zealously argued against the State’s motion to dismiss. Tellingly, the defendant does not argue before us that the trial court erred in dismissing his amended petition, nor does he argue that Holman was ineffective. In the absence of some gist of a conflict of interest, we refuse to sanction a fishing expedition to allow the defendant to cloud Holman’s performance.

CONCLUSION

For the reasons that we have stated, we affirm the judgment of the appellate court.

Affirmed.