# Illinois Official Reports

## Appellate Court

---

### *People v. Custer*, **2018 IL App (3d) 160202**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN MICHAEL CUSTER, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0202 |
| Filed | February 6, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, Nos. 10-CF-896, 12-CF-410; the Hon. Albert L. Purham Jr., Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Steven Varel, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Jerry Brady, State's Attorney, of Peoria (Patrick Delfino, Lawrence M. Bauer, and Dawn Duffy, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Justices Holdridge and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1 Defendant, John Michael Custer, appeals from the Peoria County circuit court's third-stage denial of his postconviction petition. Defendant argues that he received unreasonable assistance of postconviction counsel. We reverse and remand with directions.

¶ 2                                                FACTS

¶ 3 In case No. 10-CF-896, the State charged defendant with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2010)). During the pretrial proceedings, defendant retained private counsel, Clyde Hendricks. On November 14, 2011, defendant entered an open guilty plea to the unlawful possession of a controlled substance charge. Defendant told the court that he had discussed the plea with Hendricks and Hendricks had answered all his questions. The court admonished defendant that he could receive a sentence of 1 to 6 years' imprisonment or up to 30 months' probation. Defendant said he understood the possible penalties. Defendant also indicated he was entering the plea voluntarily. The court accepted defendant's plea and continued the case for a sentencing hearing. At the time, defendant remained free on bond.

¶ 4 In April 2012, while defendant was awaiting sentencing, the State charged defendant in case No. 12-CF-410 with unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2012)), aggravated assault (720 ILCS 5/12-2(a) (West 2012)), and unlawful use of a weapon (720 ILCS 5/24-1(a)(2) (West 2012)). Around the same time, in case No. 12-CF-246, the State also charged defendant with aggravated battery.[1]

¶ 5 On May 3, 2012, case Nos. 10-CF-896 and 12-CF-410 were called for a combined hearing. Defendant failed to appear at the hearing, and the court issued a warrant for defendant's arrest. Defendant was arrested on September 6, 2012.

¶ 6 On October 25, 2012, the court called case No. 10-CF-896 for a sentencing hearing. The State asked that the court impose a maximum six-year prison sentence. The State argued that defendant had failed to appear for the first sentencing hearing and his criminal history included 5 felony convictions, 26 misdemeanor convictions, and 2 pending felony charges. Hendricks argued for a lesser sentence and emphasized that the charge was based on possession of 0.3 grams of cocaine, a very small amount. Defendant explained in allocution that almost all of his prior felony cases were derived from his 13-year relationship with Michelle Colvin.

¶ 7 The court sentenced defendant to six years' imprisonment. The court admonished defendant that, to challenge the sentence, he must first file within 30 days either a motion to withdraw the guilty plea or a motion to reconsider sentence before he could file a notice of appeal. Defendant indicated that he did not have any questions about the appeal process. The court remanded defendant to the custody of the Illinois Department of Corrections.

¶ 8 On July 23, 2013, defendant entered fully negotiated guilty pleas in case Nos. 12-CF-410 and 12-CF-246. In exchange for defendant's guilty pleas, the court imposed the agreed sentence of 4½ years' imprisonment on the aggravated battery charge in case No. 12-CF-246

---

[1]Case No. 12-CF-246 is not the subject of this appeal, but it proceeded to a combined plea and sentencing hearing with case No. 12-CF-410. As a result, the charging instrument and statutory offense citation are not a part of the record in this appeal.

and a judgment of conviction on the unlawful possession of a weapon by a felon charge in case No. 12-CF-410. The court dismissed the remaining charges and admonished defendant of his right to appeal and the prerequisite that defendant file a motion to withdraw his guilty plea within 30 days of the sentence before filing a notice of appeal.

¶ 9 On May 27, 2014, defendant filed, in case Nos. 10-CF-896 and 12-CF-410, a *pro se* petition for postconviction relief. In his petition, defendant alleged that his right to the effective assistance of counsel had been violated because Hendricks said he would appeal the court's decision in case No. 10-CF-896 but he never effectuated an appeal. Defendant also alleged that Hendricks failed to file a motion to withdraw defendant's guilty plea in case No. 12-CF-410 after defendant had asked him to. The court appointed counsel and advanced the petition to the second stage of proceedings.

¶ 10 On June 4, 2015, appointed counsel, Sam Snyder, filed a supplemental petition. The supplemental petition incorporated by reference all the allegations in defendant's *pro se* petition and attached four supporting affidavits from defendant. In the affidavits, defendant averred that Hendricks had initially told defendant that he would appeal the sentence in case No. 10-CF-896. Defendant attempted to contact Hendricks several times by telephone regarding the status of his appeal. Eventually, Hendricks told defendant that he needed to file a motion to reconsider sentence before he filed the notice of appeal. Defendant received no further information from Hendricks on the status of his appeal. Defendant directed his father and girlfriend, Colvin, to also contact Hendricks. Defendant averred that Colvin argued over the telephone with Hendricks and Hendricks told Colvin that he would "take care of what needed to be done and for [defendant] not to worry." Based on Hendricks's statement to Colvin, defendant thought that Hendricks was appealing case No. 10-CF-896. When defendant next saw Hendricks at a hearing on case No. 12-CF-410, Hendricks told defendant that an appeal in case No. 10-CF-896 was "a waste of time." Defendant also averred that Hendricks did not file a motion to withdraw his guilty plea or a notice of appeal in case No. 12-CF-410 despite defendant's request.

¶ 11 The State answered defendant's petition with a general denial of the claims. The court advanced the petition to the third stage.

¶ 12 At the evidentiary hearing, defendant testified that, in case No. 10-CF-896, he wanted to take the case to trial but Hendricks advised defendant to plead guilty. Hendricks advised defendant that the court would impose a sentence of probation or up to three years' imprisonment. Hendricks emphasized that the court would likely sentence defendant to a term of probation. Without this advice, defendant would have insisted on going to trial.

¶ 13 At the time of the plea, defendant did not comprehend the court's sentence range admonishment because he had been drinking alcoholic beverages and taking drugs. When the court imposed a six-year prison sentence, defendant was devastated. Hendricks told defendant not to worry, as he intended to appeal the sentence. Immediately after defendant was taken into custody, defendant asked Hendricks to appeal his sentence. Sometime during the week after the sentencing hearing, Hendricks told defendant that he had to file a motion to reconsider sentence before he could file the notice of appeal. Thereafter, defendant tried, without success, to contact Hendricks regarding the status of his appeal. More than one month after the court imposed the six-year sentence, defendant learned that Hendricks had not appealed the sentence. At that time, Hendricks explained that he did not pursue an appeal because defendant

had entered a blind plea and the court had the "right to be able to sentence [defendant] to whatever [the court] wanted."

¶ 14 In case No. 12-CF-410, one week after defendant's plea, defendant asked Hendricks, via letter, to file a motion to withdraw his guilty plea. Defendant received no response from Hendricks and sent a second letter one week later. Defendant was also unsuccessful in his attempts to contact Hendricks by telephone. Defendant also directed his father and Colvin to contact Hendricks; however, they too received no information on the status of defendant's appeal.

¶ 15 The State called Hendricks to testify. When Hendricks began representing defendant in case No. 10-CF-896, the State had offered a plea agreement where defendant would plead guilty to unlawful possession of a controlled substance in exchange for the State's recommendation of a four-year prison sentence. Hendricks told defendant that the charge carried a sentencing range of probation to six years' imprisonment and advised defendant that he had a "good chance" of getting less than four years' imprisonment because of the small amount of cocaine that led to the charge. Hendricks told defendant that a sentence of probation was unlikely and denied promising defendant that he would receive a sentence of probation. After discussing the sentencing consequences, defendant rejected the State's offer and entered an open guilty plea. When the court imposed the six-year sentence, Hendricks was "very surprised." Hendricks did not, at that time, advise defendant of his right to appeal because he had previously discussed the appeal process with defendant. Hendricks thought that his prior conversation plus the court's admonishment rendered any further explanation unnecessary. Hendricks said that defendant never indicated that he wanted to file a motion to reconsider sentence or appeal his conviction.

¶ 16 Hendricks also represented defendant in case No. 12-CF-410. When defendant entered his fully negotiated guilty plea, Hendricks had no concerns about defendant's ability to understand the proceedings or the consequences of his plea. Hendricks denied threatening or coercing defendant into entering the plea. Hendricks said that after defendant entered the plea, defendant did not ask him to move to withdraw the plea or appeal the conviction. Hendricks also did not tell defendant that he would appeal the case.

¶ 17 On cross-examination, Hendricks said, regarding case No. 10-CF-896, that he was "sure [he] indicated to [defendant] that *** he had a right to an appeal." Hendricks also advised defendant that the abuse of discretion standard of review on appeal made defendant's chance of success on appeal low. Hendricks was not sure if he gave this advice on the day of sentencing or during an earlier conversation with defendant. Hendricks did not intend to discourage defendant from appealing the circuit court's decision. Hendricks maintained that defendant did not indicate a desire to appeal and Hendricks would have filed a motion to reconsider sentence or a notice of appeal if requested by defendant. At the time of the sentencing hearing, Hendricks and defendant had had many discussions over the course of a year, and defendant was well versed in the criminal justice system, and therefore, Hendricks felt that he did not need to ask defendant if he wanted to appeal the court's decision.

¶ 18 After hearing the arguments of the parties, the court took the matter under advisement. Before the court issued its ruling, defendant sent an *ex parte* letter to the court that alleged Snyder had provided unreasonable assistance of postconviction counsel. Defendant contended that Snyder refused to call Colvin to testify in support of defendant's postconviction claims.

¶ 19    On August 19, 2015, before the court issued its ruling, defendant filed a *pro se* motion to reconsider. In the motion, defendant asked the court to preemptively reconsider its analysis of the case. Defendant argued that Snyder had prevented Colvin from testifying on his behalf during the evidentiary hearing. In a supporting affidavit, Colvin averred that she had contacted Hendricks after defendant's convictions and Hendricks told her that he was "taking care of" defendant's motion to withdraw the guilty plea. Colvin also averred that Snyder refused to take her statement. Defendant included a letter from Snyder with his motion. In the letter, Snyder said that he would not call Colvin to testify because her testimony pertained only to passing a note to defendant that urged him to accept a plea agreement. Snyder said that defendant's best argument was that Hendricks had failed to perfect his right to an appeal.

¶ 20    On September 9, 2015, the court issued a written order denying defendant's postconviction petition. In the order, the court refused to consider defendant's *pro se* filings, as defendant was represented by counsel. The court further found defendant's testimony was incredible and Hendricks's testimony was credible. The court concluded that defendant had failed to demonstrate that he instructed Hendricks to pursue an appeal in both cases by first filing a motion to reconsider sentence or withdraw the guilty plea.

¶ 21    On October 9, 2015, defendant filed a *pro se* notice of appeal and a motion to reconsider the court's denial of his petition. In his motion to reconsider, defendant said that Snyder had "acted against" him by not calling Colvin to testify at the third-stage hearing. Defendant urged the court to consider the affidavits from Colvin that defendant had sent on September 9, 2015. The court did not rule on the motion because of the contemporaneously filed notice of appeal.

¶ 22    We granted the parties' agreed motion to dismiss the appeal with directions for the circuit court to first rule on defendant's motion to reconsider. *People v. Custer*, No. 3-15-0718 (2016) (unpublished minute order).

¶ 23    On remand, the court called the case for a hearing on defendant's motion to reconsider. Snyder appeared on behalf of defendant, who was not present at the hearing. The State argued that the court should deny the motion, as defendant did not allege a valid basis for the court to reconsider its denial of defendant's postconviction petition. When asked for his response, Snyder said "[h]is motion speaks for itself. I would stand on what he already filed." The court denied the motion. Defendant appeals.

¶ 24                                              ANALYSIS

¶ 25    Defendant argues that the court erred in denying his motion to reconsider sentence without conducting a *Krankel* inquiry into his *pro se* allegation of unreasonable assistance of postconviction counsel. The State argues that there is no authority to extend *Krankel* to the representation of postconviction counsel. In response, defendant acknowledges that this case presents an issue of first impression. After considering the rationale behind *Krankel*, we find that a *Krankel*-like procedure should apply to situations where a defendant makes a claim of unreasonable assistance of postconviction counsel at the third stage of the proceedings.

¶ 26    *People v. Krankel*, 102 Ill. 2d 181, 187 (1984), prescribes the following procedure to address a defendant's *pro se* posttrial claim of ineffective assistance of counsel. First, after a defendant makes a *pro se* claim of ineffective assistance, the circuit court should examine the factual basis of defendant's claim and determine if it lacks merit or pertains to matters of trial strategy. *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). This proceeding is commonly described as a "preliminary inquiry." *People v. Jolly*, 2014 IL 117142, ¶ 27. The preliminary

inquiry consists of some exchange between the court and trial counsel regarding the facts and circumstances of defendant's allegations. *Moore*, 207 Ill. 2d at 78. The court may also briefly discuss the allegations with defendant. *Id.* The court can base its preliminary evaluation of defendant's claim on its knowledge of counsel's performance and the insufficiency of defendant's allegations. *Id.* at 79. Second, where the court finds that defendant's *pro se* allegations show possible neglect, the court should appoint new counsel. *Id.* at 78. This appointment avoids the conflict of interest that trial counsel would experience if he had to justify his actions contrary to defendant's position. *Id.* Third, the matter proceeds to a hearing on defendant's claim where defendant is represented by the newly appointed conflict-free counsel. *Id.*

¶ 27 The supreme court has explained that *Krankel* "serves the narrow purpose of allowing the trial court to decide whether to appoint independent counsel to argue a defendant's *pro se* posttrial ineffective assistance claims." *People v. Patrick*, 2011 IL 111666, ¶ 39. "[T]he goal of any *Krankel* proceeding is to facilitate the trial court's full consideration of a defendant's *pro se* claim and thereby potentially limit issues on appeal." *People v. Ayres*, 2017 IL 120071, ¶ 13. Additionally, the preliminary inquiry creates the necessary record for any claims raised on appeal. *Id.*

¶ 28 The instant proceeding differs from the above-described *Krankel* scenario in that defendant's *pro se* claim arose after a third-stage postconviction hearing. Unlike the posttrial stage, defendant does not have a constitutional right to the effective assistance of counsel during this collateral proceeding. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *People v. Guest*, 166 Ill. 2d 381, 412 (1995). Instead, the Post-Conviction Hearing Act (Act) allows the circuit court to appoint counsel, where requested by defendant, at the second stage of postconviction proceedings. 725 ILCS 5/122-4 (West 2014). The right to the assistance of postconviction counsel "is a matter of legislative grace, and a defendant is guaranteed only the level of assistance provided by the [Act]." *People v. Hardin*, 217 Ill. 2d 289, 299 (2005). The Act provides a defendant with the "reasonable" assistance of appointed counsel. *Id.* Appointed counsel "must be as conflict-free as trial counsel." *Id.* at 300.

¶ 29 The differences between defendant's right to the effective assistance of posttrial counsel and the reasonable assistance of postconviction counsel do not prohibit the use of a *Krankel*-like procedure during postconviction proceedings. The goals of the *Krankel* procedure hold as much value in this context as they do in the posttrial context. Namely, an inquiry into defendant's *pro se* claim of unreasonable assistance permits the circuit court to determine if new counsel needs to be appointed to avoid any conflict, develops the record regarding defendant's claim, and limits the issues on appeal. For these reasons, we find that a *Krankel*-like procedure applies to the instant case.

¶ 30 We further find defendant's argument that Snyder's advocacy of defendant's motion that alleged unreasonable assistance of counsel is the very type of conflict of interest that a *Krankel* preliminary inquiry attempts to avoid. Simply stated, "[a]n attorney cannot be expected to argue his own ineffectiveness." *People v. Lawton*, 212 Ill. 2d 285, 296 (2004). This rationale reasonably extends to the postconviction context, where appointed counsel is required to "be as conflict-free as trial counsel." *Hardin*, 217 Ill. 2d at 300. Because defendant's unreasonable assistance claim arose during the postconviction proceedings, we hold that the circuit court must conduct a preliminary inquiry on defendant's claim. The supreme court has recently reaffirmed that

"the primary purpose of the preliminary inquiry is to give the defendant an opportunity to flesh out his claim of ineffective assistance so the court can determine whether appointment of new counsel is necessary.

We also agree that judicial economy is served by holding an express claim of ineffective assistance of counsel is all that is necessary to trigger a *Krankel* inquiry. The goal of *Krankel* is to 'facilitate the trial court's full consideration of a defendant's *pro se* claims of ineffective assistance of trial counsel and thereby potentially limit issues on appeal.' *Jolly*, 2014 IL 117142, ¶ 29. Moreover, '[b]y initially evaluating the defendant's claims in a preliminary *Krankel* inquiry, the circuit court will create the necessary record for any claims raised on appeal.' *Id.* ¶ 38. Absent such a record, as in the case at bar, appellate review is precluded. Moreover, the inquiry is not burdensome upon the circuit court, and the facts and circumstances surrounding the claim will be much clearer in the minds of all involved when the inquiry is made just subsequent to trial or plea, as opposed to years later on appeal." *Ayres*, 2017 IL 120071, ¶¶ 20-21.

¶ 31 Accordingly, we reverse the circuit court's denial of defendant's motion to reconsider and remand with directions for the court to conduct a *Krankel*-like inquiry into defendant's *pro se* claim of unreasonable assistance of postconviction counsel to determine if conflict-free counsel needs to be appointed to represent defendant in a hearing on this claim.

¶ 32                                    CONCLUSION

¶ 33 The judgment of the circuit court of Peoria County is reversed and remanded with directions.[2]

¶ 34 Reversed and remanded with directions.

---

[2]Defendant also raises an issue regarding the circuit court's third-stage denial of his postconviction petition. Our resolution of the unreasonable assistance of postconviction counsel issue has rendered analysis of the denial unnecessary at this juncture. Therefore, we decline to address this issue at this time.