**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 190296-U

Order filed May 1, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| | ) | Appeal No. 3-19-0296 |
| v. | ) | Circuit No. 08-CF-734 |
| | ) | |
| TYRELL JACKSON, | ) | |
| | ) | Honorable David M. Carlson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justice Brennan concurred in the judgment.
Justice McDade dissented.

_____

**ORDER**

¶ 1     *Held*:   The circuit court properly dismissed defendant's postconviction petition at the first stage.

¶ 2     Defendant, Tyrell Jackson, appeals the dismissal of his postconviction petition.

Defendant argues the Will County circuit court erred in dismissing his petition as it presented the

gist of claims of: (1) ineffective assistance of counsel due to a conflict of interest, and (2) a

*Brady v. Maryland*, 373 U.S. 83 (1963) violation where the State manipulated and/or withheld exculpatory cell phone records. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged defendant and four codefendants with first degree murder (720 ILCS 5/9-1(a)(2), (3) (West 2008)), home invasion (*id.* § 12-11(a)(3), (5)), and armed robbery (*id.* § 18-2(a)).

¶ 5        At the conclusion of a stipulated bench trial, the court found defendant guilty of first degree murder and sentenced him to 70 years' imprisonment. On appeal, this court reversed defendant's conviction and remanded the matter for a new trial. *People v. Jackson*, 2012 IL App (3d) 100693-U.

¶ 6        On remand, public defenders Edward Jaquays and Gabriel Guzman represented defendant. On February 11, 2014, Guzman and State's Attorney Steve Platek discussed that footprint impressions found near the scene did not match defendant's shoes. Defendant's brother-in-law, Darren Jackson, overheard this conversation. Later that same day, defendant pled guilty to first degree murder.

¶ 7        On February 28, 2014, defendant filed, as a self-represented litigant, a motion to withdraw his guilty plea, wherein he argued various allegations of ineffective assistance of counsel. At the motion hearing, the court received evidence and argument on defendant's request to withdraw his guilty plea and conducted a preliminary *Krankel* inquiry into defendant's claims of ineffective assistance of counsel. Defendant stated that Darren overheard Platek tell Guzman about two new pieces of evidence: footprint impressions and cell phone records that placed defendant miles away from the location of the crime when it took place. Further, defendant

2

claimed a police report detailing an investigation of defendant's cell phone records placed him miles away from the crime.

¶ 8        Jaquays informed the court that he discussed with defendant that his firm had hired former State's Attorney Nicole Moore. Moore had previously participated in a motion to suppress proceeding as a State's attorney in the instant case. Jaquays explained to defendant that he was entitled to a different attorney. He also told defendant that unless defendant asked, he would not initiate plea agreements. Defendant asked Jaquays to approach the State with a request for a minimum sentence of 20 years' imprisonment. The State rejected that request. Jaquays thought the best sentence defendant could expect was 25 years' imprisonment. He was adamant that defendant asked him to approach the State with an offer to plead guilty in exchange for a sentence of 25 years' imprisonment. Jaquays shared his impressions of the case with defendant regarding certain harmful evidence. Jaquays informed defendant numerous times that this was not a case of physical evidence. He explained to defendant that his choices were most likely 25 years or life in prison if he was found guilty after a trial.

¶ 9        Guzman confirmed Platek told him about the footprint impressions but denied conversing about any new cell phone evidence. State's Attorney Michael Knick noted the State tendered all discovery relating to cell phone records prior to the appellate court's order remanding defendant's initial conviction, and the only discovery tendered after remand related to the gunshot residue and footprint impressions. Jaquays confirmed he received the cell phone records. The police report stated that around the time of the offenses, defendant's cell phone was within a half mile radius of a cell site located near the victims' residence.

¶ 10        The circuit court denied defendant's motion. On appeal, defendant argued the circuit court erred in allowing the State to argue against his claims of ineffective assistance of counsel

3

during the preliminary *Krankel* inquiry. This court reversed and remanded for a new preliminary *Krankel* inquiry. *People v. Jackson*, No. 3-14-0417 (2016) (unpublished minute order).

¶ 11 On remand, defendant filed a motion to withdraw his guilty plea as a self-represented litigant. Attached to the motion was an affidavit from defendant's mother, April McDowell averred:

> "On the morning of February 11, 2014 at about 10:40, I[,] 2 of my sons and again my grandson arrived at the Will County Court house. Upon reaching the court room 405, I noticed that [defendant's] baby uncle Darren Jackson was there, seated on the left side of the courtroom behind the state's attorney table.
>
> He immediately motioned for me to step into the corridor so he can tell me something. Upon reaching the hall he told me that he overheard the State's Attorney Steve Platek and one of [defendant's] attorneys' Gabrielle Guzman, speaking about the trial, and that he had been listening all day to the attorneys as they came in and left the court room talking about the trial that was about to go on. Once he heard them talking he really paid attention to the conversation, because he knew it was about [defendant]. He told me that the State's Attorney informed Mr. Guzman that they had just got forensics back and it was a slam dunk for the defense as it does not place [defendant] at the scene and also the cell phone company can not verify that he was in the area at the time of the alleged call to his phone."

Darren's affidavit was also attached to the motion. Darren averred that he overheard the State's Attorney discussing nonmatching footprint impressions with Guzman but made no mention of exculpatory cell phone records.

4

¶ 12    The circuit court appointed Michelle Hansen to represent defendant. Hansen previously worked for the public defender's office when she represented a codefendant, Reginald Chandler-Martin, who implicated defendant (see *People v. Chandler-Martin*, 2012 IL App (3d) 100734-U), but she did not work for the public defender's office at the time the court appointed her to represent defendant. Hansen did not inform the court that she previously represented a codefendant at trial. At the time Hansen represented defendant on his motion, Chandler-Martin's case was at second-stage postconviction proceedings. Hansen did not represent Chandler-Martin during the postconviction proceedings.

¶ 13    Hansen filed an amended motion to withdraw defendant's guilty plea. In the motion, she argued: (1) defendant did not knowingly waive his right to a jury trial, (2) defendant was not advised of exculpatory evidence prior to pleading guilty, (3) Guzman and Jaquays provided ineffective assistance where they did not advise defendant of exculpatory evidence before his guilty plea, (4) Jaquays provided ineffective assistance by recently hiring Assistant State's Attorney Moore and not advising defendant that he could fire Jaquays, (5) Guzman and Jaquays provided ineffective assistance by threatening defendant to plead guilty or face life in prison, and (6) defendant's family member overheard Platek tell Jaquays that it had no evidence against defendant and defendant would likely win at trial.

¶ 14    At a status hearing, the circuit court stated that it was "worked up" because McDowell left a letter on the bench. The court informed McDowell that one of the biggest things the court would not tolerate is *ex parte* communications. The court made the letter a part of the record. The court told McDowell to leave the courtroom.

¶ 15    At the hearing on the amended motion, Darren verified Guzman and Platek's conversation relating to the footprint impressions. Guzman further testified that prior to

5

defendant pleading guilty, he discussed cell phone records with defendant. Guzman did not discuss the footprint impressions directly with defendant, but he discussed it with Jaquays and defendant was present.

¶ 16        On cross-examination, Guzman testified that he and Platek only discussed footprint impressions on the morning of defendant's plea. Guzman stated he did not feel that the footprint impressions were exculpatory evidence because there were codefendants. Additionally, Platek elicited the following testimony from Guzman:

"Q. Did you or anyone else threaten [defendant] that he was going to get life in prison if he didn't take this plea?

A. I did not tell him he was going to get life. My words to him were if he were to be found guilty he is probably going to get the same sentence he got the first time around which was 70 years. I believe maybe Mr. Jaquays did tell him in different manners and different words you are going to do the rest of your life, yes.

Q. That was because the sentence would be so long it would exceed his life expectancy?

A. Yes.

Q. When that was informed to [defendant], was it a threat or was it just an explanation?

A. It was just an explanation letting him know the risk of going forward with trial, the possibility that that could happen."

The State never informed Guzman that it believed it would not prevail at trial. The only other witness to testify at the hearing was defendant. The circuit court denied the motion stating:

6

"And I think in taking that into consideration, both Mr. Guzman and Mr.

Jaquays are experienced attorneys in this courthouse; and working together, I

can't imagine that there would have been some sort of collusion to not represent

you fully.

Knowing both of those attorneys as well as I do, from a professional

standpoint it would never cross my mind what they would do would call into

question their ethical approach to preparation as well as representation of you and

your defense. So with that being said, [defendant], I'm going to deny the motion

to withdraw your plea."

Defendant appealed, and we affirmed the court's denial. *People v. Jackson*, 2018 IL App (3d)

170125.

¶ 17    Defendant filed a 31-page postconviction petition as a self-represented litigant. Relevant

to this appeal, defendant made the following conflict of interest claim:

"Petitioners post plea counsel refused to call all relevant witnesses pertaining to

the withholding of exculpatory evidence.

* * *

The judge intended to appoint someone independent of the public

defenders office, but Ms. Hansen never disclosed she represented one of

the petitioners co-defendants (Chandler-Martin 08CF732) as a public

defender in trial. Also at the time she represented the petitioner she was

also employed as a public defender. The judge clearly wanted someone

separate from the PD office because it was a clear conflict of interest for a

public defender to represent me against the public defender office. Since

7

Ms. Hanson was financially dependent on the public defenders office and currently employed while she represented the petitioner create a possibility that she did not represent the petitioner fully. Also the conflict from the office extended to her. Thus her failure to inform the petitioner, and have him waive any conflict on the record violated petitioners 6th Amendment right to the US Const."

Defendant also alleged that the State withheld exculpatory evidence, Guzman and Jaquays provided ineffective assistance, Hansen provided ineffective assistance by failing to call all relevant witnesses including defendant's mother and Jaquays, he was innocent, and there was no factual basis for his guilty plea. The circuit court dismissed the petition as frivolous and patently without merit. Defendant appealed.

¶ 18                                                    II. ANALYSIS

¶ 19          The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)) sets out a three-stage proceeding in which a criminal defendant may assert that his conviction resulted from a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). At the first stage, the court must accept as true and liberally construe all the allegations in the petition unless contradicted by the record. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). A defendant need only allege sufficient facts to state the "gist" of a constitutional claim to advance the petition to the second stage. *Hodges*, 234 Ill. 2d at 9. The circuit court may summarily dismiss a first-stage petition as frivolous or patently without merit where it has no arguable basis in law or fact. *Id.* at 16. "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* "An example of an

8

indisputably meritless legal theory is one which is completely contradicted by the record." *Id.*

"Fanciful factual allegations include those which are fantastic or delusional." *Id.* at 17. The

dismissal of a postconviction petition is reviewed *de novo*. *Id.* at 9.

¶ 20                                I. Conflict of Interest

¶ 21        Defendant first argues "[he] presented the gist of a claim of ineffective assistance of

counsel caused by a conflict of interest where he alleged his attorney who represented him at the

hearing to withdraw his guilty plea also previously represented, at trial, a *** co-defendant who

had implicated [him] and who may be able to obtain a new trial."

¶ 22        For a petition to advance to second-stage postconviction proceedings, defendant must

make an arguable showing that he received ineffective assistance of counsel. *Id.* at 17. A

defendant must show that counsel's performance was objectively unreasonable and that there is a

"reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

¶ 23        The right to effective assistance of trial counsel derives from the sixth amendment and

includes the correlative right to conflict-free representation. *People v. Hardin*, 217 Ill. 2d 289,

299 (2005). Multiple representation of criminal codefendants is not a *per se* conflict of interest.

*People v. Taylor*, 237 Ill. 2d 356, 375 (2010). While there is always the possibility that the

interests of codefendants may diverge, a conflict of interest is not inherent in multiple

representation situations merely by virtue of such representation. *Id.* "Where *** a potential

conflict of interest is not brought to the attention of the [circuit] court, 'a defendant must

establish that an actual conflict of interest adversely affected his lawyer's performance.' " *Id.*

(quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). "[D]efendant must show that an actual

conflict of interest manifested at trial." *Id.* at 376. " '[T]his means [a] defendant must point to

9

some specific defect in his counsel's strategy, tactics, or decision making attributable to the conflict.' " *Id.* (quoting *People v. Speitzer*, 123 Ill. 2d 1, 18 (1988)). Accordingly, at the first stage, defendant must point to some arguable defect in his counsel's strategy, tactics, or decision making arguably attributable to an arguable conflict.

¶ 24    Defendant argues Hansen's prior representation of Chandler-Martin was an arguable conflict of interest since Hansen owed Chandler-Martin a continuing duty of loyalty. See *People v. Gerold*, 265 Ill. 448, 477 (1914). "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent." Ill. S. Ct. R. 1.9(a) (eff. Jan. 1, 2010). Here, the matter in which Hansen previously represented Chandler-Martin is substantially related as it involves the same transaction or legal dispute. However, defendant fails to establish how defendant and Chandler-Martin's interests were materially adverse at this stage in defendant's postconviction proceedings.

¶ 25    At the time Hansen was representing defendant in his motion to withdraw his guilty plea, Chandler-Martin's case had proceeded to second-stage postconviction proceedings. Defendant argues that if Chandler-Martin's case results in a new trial, his interests would be adverse to defendant's since Chandler-Martin would likely argue at trial that he was innocent and defendant was the perpetrator. Thus, enabling defendant to withdraw his guilty plea compromises Chandler-Martin's defense theory at his hypothetical new trial because he would not be able to use defendant's guilty plea in his defense.[1]

---

[1]Defendant cites *People v. Grant*, 339 Ill. App. 3d 792, 801 (2003) for the proposition that in a joint trial an attorney may not represent two clients who have antagonistic defenses, while also recognizing that there was no joint trial in this case.

¶ 26    Defendant's theory has little, if any, connection to the record and is reliant on speculation as to the result of proceedings that may or may not occur. See *Hodges*, 234 Ill. 2d at 17. Chandler-Martin and defendant's interests were not adverse at the time Hansen represented defendant.

¶ 27    Assuming, *arguendo*, that Hansen's prior representation of Chandler-Martin is a conflict of interest, defendant must still point to some defect in Hansen's representation arguably attributable to the conflict. *Supra* ¶ 23. Defendant argues that Hansen's failure to disclose the conflict was a defect. However, this argument is circular. See *Taylor*, 237 Ill. 2d at 375-76.

¶ 28    Defendant argues Hansen was defective for not calling McDowell and Jaquays. However, "[d]ecisions concerning what witnesses to call and what evidence to present on a defendant's behalf are viewed as matters of trial strategy. Such decisions are generally immune from claims of ineffective assistance of counsel." *People v. Munson*, 206 Ill. 2d 104, 139-40 (2002). "The only exception to this rule is when counsel's chosen trial strategy is so unsound that counsel entirely fails to conduct any meaningful adversarial testing." *People v. Reid*, 179 Ill. 2d 297, 310 (1997).

¶ 29    It is clear from the record that McDowell did not hear the conversation pertaining to the alleged exculpatory evidence but learned about it only through Darren. Thus, McDowell's testimony in this regard would have been subject to a hearsay objection. And hearsay aside, any such testimony by McDowell would have been entirely cumulative of Darren's testimony about the conversation between Guzman and Jaquays. Additionally, defendant's plea counsel Guzman testified about the conversations between the attorneys and defendant, and explicitly stated that neither attorney threatened defendant. Further, Jaquays had previously explained to the court at the hearing on defendant's first motion to withdraw his plea about the details of their discussions

11

at the time of the plea. Thus, it is not arguable that Hansen's chosen trial strategy to not call McDowell or Jaquays was so unsound that she failed to conduct *any* meaningful adversarial testing. See *Reid*, 179 Ill. 2d at 310.

¶ 30　　　　In summary, defendant's petition fails to identify any arguments or proposed testimony that should have been presented at the hearing on the amended motion to withdraw his plea, that would support the claim that Hansen was ineffective. See *Hodges*, 234 Ill. 2d at 16 (meritless legal theories include ones completely contradicted by the record). Unlike our dissenting colleague, we believe the record contradicts defendant's legal theories. For these reasons, we find defendant did not present the gist of a constitutional claim of ineffective assistance of counsel by a conflict of interest.

¶ 31　　　　　　　　　　　　　　　II. Exculpatory Evidence

¶ 32　　　　Defendant argues his postconviction petition presented the gist of a claim where he alleged the State manipulated and/or withheld exculpatory cell phone records. See *Brady*, 373 U.S. 83. In support, defendant notes that the State violates a defendant's right to due process when it withholds favorable evidence that is material either to the defendant's guilt or punishment. *Id.* A *Brady* claim requires a showing that: (1) the undisclosed evidence is favorable to the accused because it is either exculpatory or impeaching; (2) the State willfully or inadvertently suppressed the evidence; and (3) the suppressed evidence prejudiced the accused because the evidence is material to guilt or punishment. *People v. Burt*, 205 Ill. 2d 28, 47 (2001).

¶ 33　　　　However, defendant's exculpatory evidence claim is contradicted by the record. Defendant bases his *Brady* claim on a conversation between the State and Guzman that Darren overheard. Defendant argues Darren overheard Platek tell Guzman new cell phone data exculpated defendant. However, Guzman denied a conversation about exculpatory cell phone

12

records ever took place. Moreover, Darren confirmed that the conversation he overheard did not involve exculpatory cell phone records but rather footprint impressions.

¶ 34    Additionally, defendant argues a police report supports the existence of cell phone records. While there are cell phone records in this case, the record supports that the State tendered those records to defendant prior to this court reversing and remanding defendant's initial conviction. Further, even if the cell phone records were not disclosed, they did not cause a *Brady* violation because the records do not exculpate defendant, but rather place him near the victim's residence at the time of the offenses. Defendant did not make the gist of a *Brady* violation claim.

¶ 35    Therefore, the petition was properly dismissed at the first stage.

¶ 36                                III. CONCLUSION

¶ 37    For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 38    Affirmed.

¶ 39    JUSTICE McDADE, dissenting:

¶ 40    The majority states the rule applicable to first stage postconviction proceedings and then seemingly ignores it. This is an initial postconviction petition filed by a *pro se* defendant.

¶ 41    Defendant alleges that his appointed counsel labored under a conflict of interest in that she had previously represented another person charged with the same crime and that her previous client claimed that defendant and not he actually committed that crime. Defendant further alleges that counsel did not disclose that prior representation to the court or to him, thus depriving him of his right to question counsel and either waive the conflict or seek unconflicted counsel.

¶ 42    We are directed by the statute to take those allegations as true unless, even liberally construed, they are affirmatively rebutted by the record. I find no evidence that they are so

13

rebutted in this case. Taken as true, defendant has alleged the gist of a claim of a sixth amendment deprivation of his right to conflict-free representation.

¶ 43 Procedurally, the statute next confers a right to appointed counsel who is directed to review his claims and the pertinent record and put those claims into proper and properly supported form. It is only then, when his allegations have presumably been appropriately formatted by a person standing on equal legal footing with the prosecutor, that the statute says they can be subjected to a merits-based attack and the State is allowed to move to dismiss the petition.

¶ 44 Also pertinent to this appeal, the statute provides that if any one of defendant's claims states the gist of a constitutional claim, all of his claims remain viable and the entire petition is submitted to appointed counsel. 725 ILCS 5/122-2.1(a)(2), (b) (West 2016); *People v. Rivera*, 198 Ill. 2d 364, 371 (2001).

¶ 45 In his petition, defendant has conflated two sixth amendment guarantees—the right to conflict-free counsel and the right to effective assistance of counsel. The failure to differentiate between the two has enabled and facilitated the analysis and disposal of both by this court.

¶ 46 Here, defendant's allegations, standing without benefit of professional assessment, judgment, articulation and shaping by legal counsel, have been subjected to the full weight of judicial dissection, analysis and reasoning, and—not surprisingly given the imbalance—been found wanting. We have applied standards and requirements of which defendant is likely unaware but that counsel would be able to bring to bear in evaluating and presenting his or her client's claims. The level playing field and procedural fairness that the legislature attempted to establish in its structuring of the Act has, in my opinion, been thwarted here.