# Illinois Official Reports

## Appellate Court

---

### *People v. Custer*, 2020 IL App (3d) 160202-B

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v. JOHN MICHAEL CUSTER, Petitioner-Appellant. |
| District & No. | Third District<br>Nos. 3-16-0202, 3-16-0203 cons. |
| Filed | March 11, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, Nos. 10-CF-896, 12-CF-410; the Hon. Albert L. Purham Jr., Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Steven Varel, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Jerry Brady, State's Attorney, of Peoria (Patrick Delfino, Lawrence M. Bauer, and Dawn Duffy, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McDade delivered the judgment of the court, with opinion.<br>Justices Holdridge and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1    On appeal from the third-stage denial of his postconviction petition, petitioner John Michael Custer argued remand was required for a *Krankel*-like hearing on his unreasonable assistance of postconviction counsel claim. See *People v. Krankel*, 102 Ill. 2d 181 (1984). Initially, we agreed with petitioner and remanded the case. Thereafter, our supreme court granted the State's petition for leave to appeal, reversed our decision, and remanded the cause with directions for us to consider the issues that were mooted by our first resolution. *People v. Custer*, 2019 IL 123339. Accordingly, we now consider petitioner's claims that (1) the circuit court erred in denying his postconviction petition after a third-stage evidentiary hearing and (2) postconviction counsel provided unreasonable assistance.

¶ 2                                    I. BACKGROUND

¶ 3    In case No. 10-CF-896, the State charged petitioner with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2010)). During the pretrial proceedings, petitioner retained private counsel, Clyde Hendricks. On November 14, 2011, petitioner entered an open guilty plea. Petitioner told the court that he had discussed the plea with Hendricks and Hendricks had answered all his questions. The court admonished petitioner that he could receive a sentence of 1 to 6 years' imprisonment or up to 30 months' probation. Petitioner said he understood the possible penalties. Petitioner also indicated he was entering the plea voluntarily. The court accepted petitioner's plea and continued the case for a sentencing hearing. At the time, petitioner remained free on bond.

¶ 4    In April 2012, while petitioner was awaiting sentencing, the State charged petitioner in case No. 12-CF-410 with unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2012)), aggravated assault (*id.* § 12-2(a)), and unlawful use of a weapon (*id.* § 24-1(a)(2)). Around the same time, in case No. 12-CF-246, the State also charged petitioner with aggravated battery.[1]

¶ 5    On May 3, 2012, case Nos. 10-CF-896 and 12-CF-410 were called for a combined hearing. Petitioner failed to appear at the hearing, and the court issued a warrant for petitioner's arrest. Petitioner was arrested on September 6, 2012.

¶ 6    On October 25, 2012, the court called case No. 10-CF-896 for a sentencing hearing. The State asked that the court impose a maximum six-year prison sentence. The State argued that petitioner had failed to appear for the first sentencing hearing and his criminal history included 5 felony convictions, 26 misdemeanor convictions, and 2 pending felony charges. Hendricks argued for a lesser sentence and emphasized that the charge was based on possession of a very small amount of cocaine, 0.3 grams. Petitioner explained in allocution that almost all his prior felony cases were derived from his 13-year relationship with Michelle Colvin.

¶ 7    The court sentenced petitioner to six years' imprisonment. The court admonished petitioner that, to challenge the sentence, he must first file within 30 days either a motion to withdraw the guilty plea or a motion to reconsider his sentence before he could file a notice of appeal.

---

[1]Case No. 12-CF-246 is not the subject of this appeal, but it proceeded to a combined plea and sentencing hearing with case No. 12-CF-410. As a result, the charging instrument and statutory offense citation are not a part of the record in this appeal.

Petitioner indicated that he did not have any questions about the appeal process. The court remanded petitioner to the custody of the Illinois Department of Corrections (DOC).

¶ 8 On July 23, 2013, petitioner entered fully negotiated guilty pleas in case Nos. 12-CF-410 and 12-CF-246. In exchange for petitioner's guilty pleas, the court imposed the agreed sentence of 4½ years' imprisonment on the aggravated battery charge in case No. 12-CF-246 and a judgment of conviction on the unlawful possession of a weapon by a felon charge in case No. 12-CF-410. The court dismissed the remaining charges and admonished petitioner of his right to appeal and the prerequisite that petitioner file a motion to withdraw his guilty plea within 30 days of the sentence before filing a notice of appeal.

¶ 9 On May 27, 2014, petitioner independently filed, in case Nos. 10-CF-896 and 12-CF-410, a petition for postconviction relief. In his petition, petitioner alleged that his right to the effective assistance of counsel had been violated because Hendricks said he would appeal the court's decision in case No. 10-CF-896 but he never effectuated an appeal. Petitioner also alleged that Hendricks failed to file a motion to withdraw petitioner's guilty plea in case No. 12-CF-410 after petitioner had asked him to. The court appointed counsel and advanced the petition to the second stage of proceedings.

¶ 10 On June 4, 2015, appointed counsel, Sam Snyder, filed a supplemental petition. The supplemental petition incorporated by reference the allegations in petitioner's *pro se* petition and attached four supporting affidavits from petitioner.

¶ 11 In the first affidavit, petitioner averred that, after the court pronounced his sentence in case No. 10-CF-896, "Hendricks stated that he was sorry and he messed up and he would appeal." Petitioner was then taken to the bullpen area of the courtroom, where Hendricks apologized a second time and reiterated that he would appeal the sentence. After petitioner was remanded to the Peoria County Jail, he called Hendricks's office multiple times to ask that Hendricks file a motion to reconsider sentence. Following his transfer to the DOC, petitioner sent multiple letters to Hendricks asking about the status of his appeal. Petitioner received no response, and he directed his father and Colvin to call Hendricks and inquire about the status of his appeal. At a hearing on case Nos. 12-CF-246 and 12-CF-410, Hendricks told petitioner that he had not filed a notice of appeal because "it would have been a waste of time."

¶ 12 In the second affidavit, petitioner reiterated that Hendricks told him multiple times in the moments after the court imposed the sentence in case No. 10-CF-896 that he would appeal the court's ruling. During a postsentencing meeting, Hendricks told petitioner that he was going to file a notice of appeal, but he first needed to file a motion to reconsider sentence. During a telephone call to Hendricks's office, Colvin got into an argument with Hendricks. Hendricks told Colvin that he would "take care of what needed to be done & for [petitioner] not to worry." Based on Hendricks's statement to Colvin, petitioner thought that Hendricks was appealing case No. 10-CF-896. When petitioner next saw Hendricks in court, Hendricks told petitioner that an appeal in case No. 10-CF-896 was "a waste of his time."

¶ 13 The third and fourth affidavits from petitioner pertained to Hendricks's representation in case Nos. 12-CF-246 and 12-CF-410.

¶ 14 The State answered the supplemental petition with a general denial of the claims. The court advanced the petition to the third stage.

¶ 15 At the evidentiary hearing, petitioner testified that, in case No. 10-CF-896, he wanted to take the case to trial but Hendricks advised him to plead guilty. Hendricks advised petitioner

that the court would impose a sentence of probation or up to three years' imprisonment. Hendricks emphasized that the court would likely sentence petitioner to a term of probation. Without this advice, petitioner would have insisted on going to trial.

¶ 16　　At the time of the plea, petitioner did not comprehend the court's sentence range admonishment because he had been drinking alcoholic beverages and taking drugs. When the court imposed a maximum sentence of six years' imprisonment, petitioner was devastated. Hendricks immediately turned to petitioner and said "[D]on't worry. I'm going to appeal this. I'm going to take care of this. This is wrong." After petitioner was relocated to the "bullpen" area of the courthouse, he told Hendricks that he "wanted to put in an appeal." At that time, Hendricks told petitioner that the State had previously offered a plea agreement with a sentence of four years' imprisonment. Petitioner was unaware of the State's prior offer, noting that he only knew that the State had offered a sentence of 5 or 5½ years' imprisonment. Petitioner became angry with Hendricks for not conveying the four-year offer sooner. Petitioner said that, if he had known of the offer before he entered the instant plea, he "probably" would have accepted it. After petitioner argued with Hendricks about the undisclosed plea offer, he again told Hendricks that he wanted to appeal his sentence. Hendricks said in reply that "he would take care of it, that this is a big mistake, and he apologized." Sometime during the week after the sentencing hearing, Hendricks told petitioner that he had to file a motion to reconsider sentence before he could file the notice of appeal. Petitioner tried, without success, to contact Hendricks regarding the status of his appeal. More than one month after the court imposed the sentence, petitioner learned that Hendricks had not filed a notice of appeal. At that time, Hendricks explained that he did not pursue an appeal because petitioner had entered a blind plea and the court had the "right to be able to sentence [petitioner] to whatever [the court] wanted."

¶ 17　　In case No. 12-CF-410, one week after petitioner's plea, petitioner asked Hendricks, via letter, to file a motion to withdraw his guilty plea. Petitioner received no response from Hendricks and sent a second letter one week later. Petitioner was also unsuccessful in his attempts to contact Hendricks by telephone. Petitioner directed his father and Colvin to contact Hendricks; however, they too received no information on the status of petitioner's appeal.

¶ 18　　The State called Hendricks to testify. When Hendricks began representing petitioner in case No. 10-CF-896, the State had offered a plea agreement where petitioner would plead guilty to unlawful possession of a controlled substance in exchange for the State's recommendation of a four-year prison sentence. Hendricks told petitioner that the charge carried a sentencing range of probation to six years' imprisonment and advised petitioner that he had a "good chance" of getting less than four years' imprisonment because of the small amount of cocaine that led to the charge. Hendricks and petitioner thought that the State's offer was "excessive." After discussing the sentencing consequences, petitioner rejected the State's offer and entered an open guilty plea.

¶ 19　　Before the sentencing hearing, Hendricks told petitioner that a sentence of probation was unlikely. Hendricks did not promise petitioner that he would receive a sentence of probation, but Hendricks argued for a sentence of probation. When the court imposed the maximum six-year sentence of imprisonment, Hendricks was "very surprised." Hendricks thought that "there was a good chance that [the sentence] might be less than the 4 years that was offered by the State's Attorney's Office." Hendricks "thought that there was a good chance that [petitioner] might receive a year or 2 less than" the four years offered by the State. Hendricks said "quite

frankly, I was surprised *** that he received—I would've been surprised if he'd even received the 4 years that was offered by the State. I thought that that was an excessive offer." Hendricks "could not conceive of that amount of cocaine generating a sentence of 4 years, much less 6." After the court imposed the sentence, Hendricks expressed his "disappointment and surprise" to petitioner. Hendricks told petitioner that he was "flabbergasted by the sentence." Petitioner was angry at the court and the State after the court imposed the maximum sentence. Hendricks was "sure [he] indicated to [petitioner] that *** he had a right to appeal." Hendricks also advised petitioner that the abuse of discretion standard of review on appeal made petitioner's chance of success on appeal low. Hendricks thought that his prior conversation plus the court's admonishment rendered any further explanation unnecessary. Hendricks said that petitioner never indicated that he wanted to file a motion to reconsider sentence or appeal his conviction. Hendricks would have filed a motion to reconsider sentence or a notice of appeal if requested by petitioner.

¶ 20    Hendricks also represented petitioner in case No. 12-CF-410. When petitioner entered his fully negotiated guilty plea, Hendricks had no concerns about petitioner's ability to understand the proceedings or the consequences of his plea. Hendricks denied threatening or coercing petitioner into entering the plea. Hendricks said that, after petitioner entered the plea, petitioner did not ask him to move to withdraw the plea or appeal the conviction. Hendricks also did not tell petitioner that he would appeal the case.

¶ 21    After hearing the arguments of the parties, the court took the matter under advisement. Before the court issued its ruling, petitioner sent an *ex parte* letter to the court that alleged Snyder had provided unreasonable assistance of postconviction counsel. Petitioner contended that Snyder refused to call Colvin to testify in support of petitioner's postconviction claims.

¶ 22    On August 19, 2015, before the court issued its ruling, petitioner independently filed a motion to reconsider. In the motion, petitioner asked the court to preemptively reconsider its analysis of the petition. Petitioner argued that Snyder had prevented Colvin from testifying on his behalf during the evidentiary hearing. In a supporting affidavit, Colvin averred that she had contacted Hendricks after petitioner's convictions and Hendricks told her that he was "taking care of" petitioner's motion to withdraw the guilty plea. Colvin also averred that Snyder refused to take her statement. Petitioner included a letter from Snyder with his motion. In the letter, Snyder said that he would not call Colvin to testify because her testimony pertained only to passing a note to petitioner that urged him to accept a plea agreement. Snyder said that petitioner's best argument was that Hendricks had failed to perfect his right to an appeal.

¶ 23    On September 9, 2015, the court issued a written order denying petitioner's postconviction petition. In the order, the court refused to consider petitioner's self-represented filings, as petitioner was represented by counsel when he made the filings. The court further found that petitioner's testimony was incredible and Hendricks's testimony was credible. The court concluded that petitioner had failed to demonstrate that he instructed Hendricks to pursue an appeal in both cases by first filing a motion to reconsider sentence or withdraw the guilty plea.

¶ 24    On October 9, 2015, petitioner independently filed a notice of appeal and a motion to reconsider the court's denial of his petition. In his motion to reconsider, petitioner said that Snyder had "acted against" him by not calling Colvin to testify at the third-stage hearing. Petitioner urged the court to consider the affidavits from Colvin that petitioner had sent on September 9, 2015. The court did not rule on the motion because of the contemporaneously filed notice of appeal.

¶ 25    We granted the parties' agreed motion to dismiss the appeal with directions for the circuit court to first rule on petitioner's motion to reconsider. *People v. Custer*, No. 3-15-0718 (2016) (unpublished minute order).

¶ 26    On remand, the court called the case for a hearing on petitioner's motion to reconsider. Snyder appeared on behalf of petitioner, who was not present at the hearing. The State argued that the court should deny the motion, as petitioner did not allege a valid basis for the court to reconsider its denial of petitioner's postconviction petition. When asked for his response, Snyder said "[h]is motion speaks for itself. I would stand on what he already filed." The court denied the motion. Petitioner appealed.

¶ 27    On appeal, petitioner raised two issues: (1) the court erred in denying his postconviction petition after a third-stage evidentiary hearing, and (2) Snyder failed to provide a reasonable level of assistance or, in the alternative, the cause should be remanded for a *Krankel*-like hearing on petitioner's claims of unreasonable assistance of postconviction counsel. See *People v. Krankel*, 102 Ill. 2d 181, 187 (1984). We reversed the court's denial and remanded the cause with directions for the court to conduct a *Krankel*-like inquiry into petitioner's claim of unreasonable assistance of postconviction counsel. *People v. Custer*, 2018 IL App (3d) 160202, ¶ 31. Following our ruling, the State filed a petition for leave to appeal to the Illinois Supreme Court. Ill. S. Ct. R. 315(a) (eff. Apr. 1, 2018). The supreme court allowed the State's petition and declined petitioner's invitation to extend the posttrial procedures created in *Krankel* to allegations of unreasonable assistance of postconviction counsel. *Custer*, 2019 IL 123339, ¶ 42. The supreme court reversed our judgment and remanded the cause with directions for us to consider the issues raised by petitioner. *Id.* ¶ 46.

¶ 28                                    II. ANALYSIS
¶ 29                        A. Denial of Postconviction Petition
¶ 30    Petitioner argues the court erred in denying his postconviction petition after an evidentiary hearing because the petition made a substantial showing that Hendricks either (1) disregarded his express request to challenge his sentence and appeal or (2) failed to properly consult with petitioner to determine whether he wished to file a motion to reconsider sentence and notice of appeal. We find that the court did not err in denying the petition, as Hendricks's testimony credibly established that he explained to petitioner his chance of success on appeal and petitioner did not express a desire to challenge the sentence.

¶ 31    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)) provides a three-stage proceeding in which a petitioner may challenge his conviction or sentence based on a substantial violation of his constitutional rights. *People v. Swamynathan*, 236 Ill. 2d 103, 113 (2010). At the first stage, the circuit court must independently assess petitioner's petition and determine if it is "frivolous" or "patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2014); *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). To advance to the second stage, "a petition need only present the gist of a constitutional claim." *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). At the second stage, the court may appoint counsel to represent an indigent petitioner (725 ILCS 5/122-4 (West 2014)), and the State can move to dismiss the petition (*id.* § 122-2.1(b)). If petitioner makes a substantial showing of a constitutional violation, the petition advances to a third-stage evidentiary hearing. *Id.* § 122-6. At the third stage, petitioner "bears the burden of making a substantial showing of a constitutional violation." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). At this stage, the court must make fact-finding and

credibility determinations. *Id.* We will not reverse the court's ruling unless it is manifestly erroneous. *Id.* That is, "the opposite conclusion is clearly evident." *People v. Coleman*, 2013 IL 113307, ¶ 98.

¶ 32 To prevail on a postconviction claim of ineffective assistance of plea counsel, petitioner must make a substantial showing that (1) plea counsel's performance fell below an objective standard of reasonableness and (2) this substandard performance caused prejudice. *People v. Ross*, 229 Ill. 2d 255, 260 (2008) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). "Regarding performance, it is professionally unreasonable to disregard specific instructions from the [petitioner] to file a notice of appeal." *Id.* at 261 (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)). "Regarding prejudice, a [petitioner] must demonstrate that there is a reasonable probability that, but for counsel's deficient representation, the [petitioner] would have appealed." *Id.* at 262 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000)). "[P]rejudice may be presumed when defense counsel's ineffectiveness rendered appellate proceedings nonexistent, essentially denying the [petitioner's] right to appeal." *Id.*

¶ 33 In this case, the determination of whether petitioner made a substantial showing of the deficient performance and prejudice components of the ineffective assistance test distilled down to a credibility contest between the testimony of petitioner and Hendricks. During the evidentiary hearing, petitioner stated that he was "devastated" after the court imposed the maximum term sentence, as this sentence was far greater than the sentence that Hendricks suggested that the court would impose. Immediately after the court pronounced the sentence, Hendricks turned to petitioner and said that he intended to appeal the court's ruling. Thereafter, petitioner repeatedly told Hendricks to appeal the sentence. Despite petitioners' repeated direction to appeal, Hendricks did not file a motion to reconsider the sentence or notice of appeal.

¶ 34 Hendricks's testimony shares with petitioner's testimony the feelings of surprise and disappointment that followed the court's imposition of the maximum-term sentence. Hendricks indicated that, before the court imposed the six-year sentence, he thought that a sentence of four or more years was excessive given the relatively small amount of cocaine that led to the charge. Despite his shocked reaction and petitioner's frustration with the sentencing outcome, Hendricks said that petitioner did not direct him to challenge the sentence and he did not pursue an appeal. Hendricks was, however, certain that he informed petitioner of his right to appeal and advised petitioner that the abuse of discretion standard of review rendered petitioner's chance of success low.

¶ 35 These competing versions of the postsentencing events presented the circuit court with a credibility determination. Ultimately, the court determined Hendricks's testimony that he advised petitioner of his right to appeal and petitioner expressed no desire to challenge the sentence to be credible. After reviewing the evidence on both sides of this credibility determination, we find that the court's finding was not manifestly erroneous, as the opposite conclusion is not clearly apparent. Therefore, the court did not err in denying petitioner's third-stage postconviction petition.

¶ 36                              B. Assistance of Postconviction Counsel

¶ 37 Petitioner argues Snyder provided unreasonable assistance during the hearing on petitioner's independently filed motion to reconsider the denial of his postconviction petition because (1) Snyder had a *per se* or actual conflict of interest where he orally adopted

petitioner's motion that alleged that Snyder had provided unreasonable assistance of counsel and (2) Snyder failed to zealously argue petitioner's motion. We find that our supreme court's ruling implicitly foreclosed these claims as it found that petitioner's underlying complaint about Snyder's representation, which led to the conflict, was meritless. See *Custer*, 2019 IL 123339, ¶¶ 37-39.

¶ 38 Generally, a postconviction petitioner does not have a constitutional right to counsel. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). However, the Act provides an indigent petitioner with the right to the limited assistance of appointed counsel at the second and third stages of postconviction proceedings. 725 ILCS 5/122-4 (West 2014). Because petitioner's right to counsel is wholly statutory, rather than constitutional, the extent of counsel's representation is determined solely by the Act. *People v. Cotto*, 2016 IL 119006, ¶ 45. A petitioner is entitled only to a "reasonable" level of assistance in postconviction proceedings. *Id.* This standard "is significantly lower than the one mandated at trial by our state and federal constitutions." *Custer*, 2019 IL 123339, ¶ 30. "Illinois Supreme Court Rule 651 (eff. July 1, 2017) sharply limits the requisite duties of postconviction counsel." *Id.* ¶ 32. Counsel is "required only to certify that they have" (1) consulted with the petitioner, (2) examined the record to shape the petitioner's claims, and (3) made any amendments to the petition that are necessary for the adequate presentation of those claims. *Id.*; Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

> "Rule 651(c) requires only that postconviction counsel certify having undertaken the limited actions prescribed. Those requirements do not include bolstering every claim presented in a petitioner's *pro se* postconviction petition, regardless of its legal merit, or presenting each and every witness or shred of evidence the petitioner believes could potentially support his position." *Custer*, 2019 IL 123339, ¶ 38.

¶ 39 Here, petitioner characterizes Snyder's unreasonable assistance as the result of a conflict of interest. While Rule 651(c) does not address conflicts, prior to *Custer*, the supreme court broadly interpreted the reasonable assistance standard to include more than the duties listed in the rule. In *Cotto*, the supreme court stated, "Rule 651(c) 'is merely a vehicle for ensuring a reasonable level of assistance' [citation] and *should not be viewed as the only guarantee of reasonable assistance* in postconviction proceedings." (Emphasis added.) *Cotto*, 2016 IL 119006, ¶ 41 (quoting *People v. Anguiano*, 2013 IL App (1st) 113458, ¶ 37). In *People v. Hardin*, 217 Ill. 2d 289, 300 (2005), the supreme court stated, "[i]f postconviction counsel is appointed to mold the defendant's allegations into legally cognizable shapes [citation], that counsel *must be as conflict-free as trial counsel*. [Citation.] The right to reasonable assistance of postconviction counsel *includes the correlative right to conflict-free representation*. [Citation.]" (Emphases added.) While *Custer* did not expressly overrule *Cotto* and *Hardin*, it more narrowly defined the reasonable assistance standard in terms of the Rule 651(c) duties.[2] Ultimately, this determination is immaterial, as petitioner's underlying claim is meritless.

_____

[2] The text of Rule 651(c) does not address counsel's duties beyond the second stage of postconviction proceedings. See *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 59. While petitioner is entitled to "reasonable assistance" of appointed counsel even without Rule 651, the supreme court has not explicitly stated a standard, distinct from the three duties in Rule 651, with which we would evaluate counsel's performance. *Id.* ¶ 58. When faced with this scenario, the First District applied a "*Strickland*-like analysis" that required an evaluation of prejudice. *Id.* ¶ 59. In contrast, the Second District found that the supreme court rejected a *Strickland*-like prejudice analysis. See *People v. Perkins*, 367 Ill. App. 3d 895, 905 (2006) (finding the supreme court, in *People v. Turner*, 187 Ill. 2d

¶ 40     In his argument to the supreme court, petitioner contended that he would have " 'no recourse' if *Krankel* [was] not extended" because he would be unable seek relief where postconviction counsel failed to investigate or call a particular witness. *Custer*, 2019 IL 123339, ¶ 37. In response to this hypothetical, the supreme court said:

> "[T]he outcome on appeal would be the same both with or without a preliminary *Krankel* hearing. New counsel need not be appointed for a *pro se* postconviction petitioner if the claims raised are either objectively meritless or relate only to alleged errors in trial strategy. [Citations.] As we recently reiterated, 'matters of trial strategy are generally immune from claims of ineffective assistance of counsel.' *People v. Dupree*, 2018 IL 122307, ¶ 44. We conclude that many of petitioner's cited examples fall under the heading of 'trial strategy,' such as counsel's decisions to call and examine witnesses and to present evidence. See *People v. West*, 187 Ill. 2d 418, 432 (1999) (listing examples of decisions deemed to be trial strategy). Errors in trial strategy do not constitute ineffective assistance unless ' "counsel entirely fails to conduct any meaningful adversarial testing" ' (*West*, 187 Ill. 2d at 432-33 (quoting *People v. Guest*, 166 Ill. 2d 381, 394 (1995)), a claim petitioner has not made here." *Id.* ¶ 39.

The supreme court's response establishes that petitioner's underlying complaint about Snyder's failure to call Colvin to testify at the evidentiary hearing is meritless. Specifically, this decision was a matter of trial strategy, and petitioner did not argue in his motion that Snyder failed to conduct any meaningful adversarial testing. Therefore, any remand from a finding of a conflict of interest would be fruitless, as petitioner's *pro se* motion would be denied. Alternatively, petitioner cannot demonstrate that Snyder's conflict caused him prejudice, as the supreme court's ruling established that his underlying claim was meritless. Accordingly, we find that petitioner has failed to demonstrate that he received unreasonable assistance of postconviction counsel.

¶ 41                               III. CONCLUSION
¶ 42     The judgment of the circuit court of Peoria County is affirmed.

¶ 43     Affirmed.

---

406 (1999), and *People v. Johnson*, 154 Ill. 2d 227 (1993), "exclude[d] requiring a defendant to make a positive, *Strickland*-type showing that his counsel's failure to comply with Rule 651(c) caused prejudice"). However, we need not attempt to further define the reasonable assistance standard or examine Snyder's actions at the third stage and beyond through the lens of Rule 651(c), as petitioner's motion that prompted Snyder's continued representation has no merit. In other words, petitioner either cannot show prejudice, or a remand would be fruitless, as his claim that Snyder failed to call Colvin to testify would be deemed strategic.