NOTICE

Decision filed 10/12/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 200062-U

NO. 5-20-0062

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 14-CF-1843 |
| | ) | |
| BRANDON McGEE, | ) | Honorable |
| | ) | Kyle A. Napp, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WHARTON delivered the judgment of the court.
Justices Moore and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Postconviction attorneys who included claims in amended postconviction petitions that were not raised in the defendant's *pro se* petition were required to provide reasonable assistance. Where counsel's failure to attach affidavits or other documentary evidence in support of the additional claims raised in the amended petitions did not prevent the court from considering those claims on their merits the defendant was required to demonstrate prejudice. Because he is unable to do so, we affirm the circuit court's second-stage dismissal of the defendant's postconviction petition.

¶ 2    The defendant, Brandon McGee, pled guilty to attempted first degree murder in a negotiated plea agreement. He subsequently filed a postconviction petition asserting that he received ineffective assistance of plea counsel. The defendant appeals the second-stage dismissal of his postconviction petition, arguing that the attorneys appointed to represent him did not provide him with the reasonable assistance guaranteed by the Post-Conviction Hearing Act (725 ILCS

1

5/122-1 *et seq.* (West 2016)) because they failed to attach affidavits or other documentation to support claims raised in the amended petitions they filed on his behalf. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The charge against the defendant resulted from the shooting of Danrius Braxton in August 2014. Braxton was standing next to a vehicle parked in front of the home of his friend, Trevonte Caldwell, talking to another friend, Keron Hickman, when a vehicle drove past them, stopped, then pulled away. The shooter got out of the vehicle, fired at them, then fled on foot. Braxton was struck by two bullets. One struck his head, the other struck his left ankle.

¶ 5      Detective Andrew Pierson interviewed Braxton and Caldwell after the shooting. Both men were familiar with the defendant. Although Braxton could not positively identify the shooter, he told Pierson that the shooter "resembled" Brandon McGee. Caldwell told Pierson that he was walking from his home toward Braxton and Hickman facing toward the shooter when the shooting occurred. He was able to identify the defendant as the shooter.

¶ 6      On September 25, 2014, Pierson testified before a grand jury. He described the above statements from Braxton and Caldwell. In addition, he testified that during the six weeks prior to the shooting, three other shootings had occurred involving the same vehicle, which belonged to the defendant's cousin, Hosiah Stiff. All of the targets were Braxton's friends or family members.

¶ 7      The defendant was indicted on one count each of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2012)), aggravated battery with a firearm (*id.* § 12-3.05(e)(1)), and unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)). The attempted murder charge included an allegation that in committing the crime, the defendant personally discharged a firearm and caused great bodily harm to Braxton. See *id.* § 8-4(c)(1)(D) (mandating that a sentence enhancement of 25 years to natural life be added to the sentence imposed for attempted first degree

murder if the defendant personally discharged a firearm thereby proximately causing great bodily harm to another person).

¶ 8    On March 5, 2015, the defendant pled guilty to the attempted murder charge pursuant to a negotiated plea agreement. At the plea hearing, the defendant's public defender, Mary Copeland, described the agreement as follows: The defendant would plead guilty to count I of the indictment in this case (the attempted murder charge) in exchange for which the State would dismiss the remaining two charges in this case and eight additional charges in four other cases pending against the defendant. In addition, the agreement called for a sentence of 18 years in prison, to be served at 85%. Judge Napp asked the defendant, "Mr. McGee, is that your understanding of the plea negotiations?" The defendant replied, "Yes, your Honor."

¶ 9    In response to further questioning by Judge Napp, the defendant indicated that he was 20 years old; that he had completed eighth grade; and that he was able to read, write, and understand English. Judge Napp then asked, "Are you under the influence of any drug or alcohol as you stand before me today?" The defendant replied, "No, I'm not."

¶ 10   Next, the court explained the allegations in the attempted murder charge, including the allegation that the defendant personally discharged a firearm thereby causing great bodily harm to Braxton. The defendant indicated that he understood the allegations of the charge and that he wanted to plead guilty. The court next explained to the defendant the rights he was giving up by pleading guilty, pausing a few times to ask the defendant whether he understood these rights. Each time he was asked, the defendant indicated that he understood.

¶ 11   The court then explained to the defendant that he faced a possible prison sentence of 6 to 30 years on the attempted murder charge. She further explained that, if the defendant had a previous conviction for a Class X felony within the last 10 years, he could be sentenced instead to

an extended term of 30 to 60 years. The defendant indicated that he understood the court's explanation.

¶ 12    At this point, Copeland informed the court that it would be necessary to "take out some of the language" in the attempted murder charge due to the applicability of the mandatory firearm sentence enhancement to the charge as written. See 720 ILCS 5/8-4(c)(1)(D) (West 2012). After an off-the-record discussion, the court read an amended information to the defendant. The information omitted the allegation that the defendant had personally discharged a firearm, but was otherwise identical to the charge of attempted first degree murder in the indictment. After reading the charge, the court asked the defendant, "Do you understand what they say that you did, sir?" The defendant replied, "Yes, your Honor."

¶ 13    The State next presented the factual basis for the defendant's plea, after which the court questioned the defendant further. In response to these questions, the defendant indicated that he had not been forced or threatened to plead guilty; that no promises had been made to him to induce his plea, other than those included in the negotiated plea agreement; and that he had been given enough time to discuss the consequences of the plea with his attorney.

¶ 14    The court found that the defendant's plea was knowing and voluntary and that there was a factual basis for the plea. The court therefore accepted the defendant's plea and sentenced him to 18 years in prison in accordance with the plea agreement.

¶ 15    On April 5, 2015, the defendant filed a *pro se* motion to reduce his sentence. The court denied the motion on April 24.

¶ 16    On March 5, 2018, the defendant filed a *pro se* petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)). He alleged that he received ineffective assistance of plea counsel because Copeland failed to conduct a reasonable investigation into

possible defenses and failed to file a motion to dismiss the charges based on a violation of his speedy trial rights. In support of his claim that Copeland failed to conduct a reasonable investigation, the defendant alleged that she failed to interview Braxton or obtain his statement to police in which he indicated that he was unable to identify the shooter.

¶ 17    Attached to the *pro se* petition were the defendant's own affidavit and a copy of a report in which Detective Pierson outlined the information he had obtained from Braxton about the shooting. In pertinent part, Braxton told Pierson that there had been prior incidents involving a conflict between the defendant and his associates and Braxton and his friends. More specifically, Braxton indicated that the defendant had been following him around and that one of his friends had been shot twice by the defendant. Braxton also described an earlier confrontation between himself and the defendant that did not involve any violence. He noted that at the time, the defendant was in the same vehicle Braxton later saw at the scene of the shooting. Finally, Braxton told Pierson that he was unable to identify the shooter, but he stated that the shooter resembled the defendant.

¶ 18    On April 4, 2018, Judge Napp advanced the defendant's petition to the second stage. Attorney Steve Griffin was appointed to represent him.

¶ 19    On November 19, 2018, Griffin filed an amended petition on the defendant's behalf, styled as a "Request for Leave to Amend and Adopt." In it, he asked to adopt the defendant's *pro se* petition, noting that it contained "substantial factual content and allegations" and was supported by an affidavit. In addition, he alleged that (1) the defendant had a history of treatment for mental health issues "during his formative years," which included multiple hospitalizations; (2) the defendant had been suicidal at some point during adolescence; (3) the defendant "was prescribed substantial doses of psychotropic medicines"; and (4) the defendant was unable to control his

5

impulses when he was not taking his medications. Griffin argued that plea counsel was ineffective because she did not "explore possible defenses related to [the] Defendant's mental health at or about the time of the offense," including requesting a finding of guilty but mentally ill.

¶ 20    On December 6, 2018, the State filed a motion to dismiss the defendant's petition. In it, the State asserted that (1) the defendant was fit to stand trial at all times during the pendency of the case; (2) at the plea hearing, he acknowledged that he understood the rights he was giving up by opting to plead guilty; and (3) the plea agreement "greatly reduced the sentencing range" the defendant faced.

¶ 21    On March 19, 2019, Griffin filed a motion to withdraw as counsel, alleging that the defendant had requested that he withdraw due to disagreements on how to proceed with the case. On April 23, the court allowed Griffin to withdraw as counsel and appointed Donna Polinske to represent the defendant.

¶ 22    On November 26, 2019, Polinske filed an amended postconviction petition on behalf of the defendant. In it, she expressly incorporated all the allegations in both the defendant's *pro se* petition and the amended petition filed by Griffin. She additionally alleged that plea counsel was ineffective for failing to request a psychiatric examination of the defendant, proceeding with the plea when the defendant was "on various medications," and ignoring the defendant's claim that he was innocent.

¶ 23    The matter came for a hearing on February 19, 2020. That same day, the State filed an amended motion to dismiss; the defendant filed an affidavit in support of the amended postconviction petition filed by Polinske; and Polinske filed a certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). In the defendant's affidavit, he attested that the allegations of the amended petition were true. In its motion, the State repeated the allegations

6

made in its original motion to dismiss. In addition, the State responded to the defendant's allegations concerning plea counsel's failure to address the defendant's mental health prior to the plea hearing by alleging that the defendant said "no" when asked at the plea hearing whether he was under the influence of any drugs that would impair his ability to understand the plea.

¶ 24   At the hearing on the State's motion, the prosecutor indicated that she would stand on the State's written motion. She further argued, however, that "the contents of the transcript" of the defendant's plea hearing were sufficient to defeat all of his postconviction claims. Judge Napp noted that she had a transcript of the plea hearing.

¶ 25   On behalf of the defendant, Polinske argued that plea counsel failed to investigate or interview witnesses after discussing a plausible defense with the defendant—specifically, Braxton's inability to identify him as the shooter. Polinske next addressed the arguments related to the defendant's mental health. She explained that the defendant had been prescribed psychotropic medication throughout his adolescence, shortly before his arrest, and while he was in the county jail. She argued as follows:

> "Although he was asked on the record if he was under the influence of any drugs or alcohol, Mr. McGee answered no, he wasn't. He was under the influence of the drugs, excuse me, that were prescribed to him. And as many people do, they don't believe they're under the influence of any drug or alcohol if they're taking their prescribed medication, which is what the case was in this particular instance."

¶ 26   In response, the prosecutor argued that plea counsel, Mary Copeland, was "known to all parties in this case as a very competent and skilled attorney." She further argued that the plea negotiations had been "substantial," and had resulted in a sentence of 18 years when the defendant would have faced a sentencing range of 31 years to life had he been convicted after a trial.

¶ 27 In ruling from the bench, Judge Napp relied heavily on the Illinois Supreme Court's decision in *People v. Brown*, 2017 IL 121681. She explained that ineffective assistance of plea counsel requires the defendant to demonstrate that but for plea counsel's errors, he would have insisted on going to trial rather than pleading guilty. She further explained that, under *Brown*, determining whether a defendant has made this showing requires courts to compare the consequences of a conviction after trial with the consequences of pleading guilty. Judge Napp emphasized that the defendant received a sentence of 18 years as part of the plea agreement, but that if he had rejected the agreement, he would have faced a sentence of 31 years to life in prison on the attempted murder charge in addition to possibly facing consecutive sentences on multiple other charges that were dropped pursuant to the agreement.

¶ 28 Judge Napp then stated that she also had to consider whether defense counsel had failed to advise him of "anything that could be particularly relevant to [his] case." She explained, "In some cases if they didn't tell you it's 85 percent versus 50 percent, if they didn't tell you about deportation issues. None of that applies in this matter. Your allegation is simply that you weren't happy that you pled guilty."

¶ 29 In conclusion, the court found that the defendant had failed to meet his burden of demonstrating a substantial violation of his constitutional rights. She therefore granted the State's motion to dismiss his postconviction petition. This appeal followed.

¶ 30                                II. ANALYSIS

¶ 31 On appeal, the defendant argues that both Griffin and Polinske failed to provide him with reasonable representation because they provided no evidentiary support for the either the claims raised in the initial *pro se* petition or the claims they added in the amended petitions they filed on his behalf. He argues that this failure ran afoul of their obligation to adequately present his claims

8

to the court. See Ill. S. Ct. R. 651(c) (eff. July 1, 2017). We note that the defendant's *pro se* petition, which both attorneys adopted, was supported by a notarized affidavit and documentary evidence in the form of the police report detailing Braxton's statements to Detective Pierson. Thus, it is only their failure to support the additional claims with documentary evidence that is at issue.

¶ 32   In response, the State contends that because appointed postconviction attorneys have no obligation to present claims other than those raised in the defendant's *pro se* petition under Rule 651(c), they likewise have no obligation to provide evidentiary support for any additional claims they raise. Thus, the State asserts, the defendant's attorneys fulfilled their obligations. Although we reject the State's contention that the limits of Rule 651(c) mean that counsel had no obligation with regard to the additional claims raised in the amended petitions, we nevertheless reject the defendant's claim of unreasonable assistance on other grounds.

¶ 33   The Post-Conviction Hearing Act provides a procedure for prisoners who wish to challenge their convictions or sentences on the grounds of substantial violations of their state or federal constitutional rights. *People v. Boykins*, 2017 IL 121365, ¶ 9. Postconviction proceedings involve three stages. At the first stage, the trial court evaluates the defendant's petition independently and determines whether it is frivolous or patently without merit. *People v. Custer*, 2020 IL App (3d) 160202-B, ¶ 31. If the court does not dismiss the petition on this basis within 90 days, it is advanced to the second stage. *People v. Wallace*, 2018 IL App (5th) 140385, ¶ 27. At that stage, counsel may be appointed to represent the defendant, and the State may respond by filing an answer or a motion to dismiss. *Custer*, 2020 IL App (3d) 160202-B, ¶ 31. If the court determines that the defendant's allegations make a substantial showing of a constitutional violation, the petition proceeds to the third stage, which generally involves an evidentiary hearing on his claims. *Wallace*,

2018 IL App (5th) 140385, ¶ 27. If the defendant does not meet this standard, the petition may be dismissed. *People v. Cotto*, 2016 IL 119006, ¶ 28.

¶ 34 At the second and third stages of postconviction proceedings, the defendant is entitled to the appointment of an attorney. *Wallace*, 2018 IL App (5th) 140385, ¶ 29 (citing 725 ILCS 5/122-4 (West 2012)). Because the right to counsel in postconviction proceedings is wholly statutory, the level of assistance required is something less than the effective assistance of counsel constitutionally mandated at trial or on appeal. *People v. Custer*, 2019 IL 123339, ¶ 30. Instead, postconviction petitioners are entitled to the level of assistance guaranteed by the Post-Conviction Petition Act, which has been defined as "reasonable assistance." *People v. Greer*, 212 Ill. 2d 192, 204 (2004).

¶ 35 Providing reasonable assistance requires appointed counsel to comply with the obligations outlined in Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). That is, counsel must (1) meet with the defendant to ascertain his or her claims of error, (2) review the record of the trial court proceedings, and (3) make any amendments to the defendant's *pro se* petition that are necessary to adequately present the defendant's claims to the court. *Wallace*, 2018 IL App (5th) 140385, ¶ 30. Adequately presenting the defendant's claims requires counsel to shape the claims into proper legal form. See *People v. Collins*, 2021 IL App (1st) 170597, ¶ 38. It also requires counsel to attach affidavits or other documentary evidence to support any claims based on evidence outside the record. *People v. Burns*, 2019 IL App (4th) 170018, ¶ 20.

¶ 36 Where, as here, postconviction counsel files a certificate of compliance with Rule 651(c), there is a rebuttable presumption that counsel has provided reasonable assistance. *Wallace*, 2018 IL App (5th) 140385, ¶ 31. The question of whether counsel provided the reasonable assistance required by the Post-Conviction Hearing Act is subject to *de novo* review. *Id.*

10

¶ 37　　The defendant argues that his postconviction attorneys failed to meet the third of the obligations imposed upon them by Rule 651(c)—that of adequately presenting his claims to the court. As the State correctly points out, however, Rule 651(c) does not require appointed postconviction counsel to raise any claims in addition to those raised by the defendant in his *pro se* petition. See *People v. Johnson*, 154 Ill. 2d 227, 245 (1993). The State argues that, as such, appointed postconviction counsel has no obligations with respect to any claims that were not included in the defendant's *pro se* petition. The issue before us, then, is what, if any, obligation counsel has with respect to any additional claims raised in an amended petition.

¶ 38　　We find guidance in the Illinois Supreme Court's decision in *People v. Cotto*, 2016 IL 119006. Although not precisely analogous to the case before us, the *Cotto* decision addresses the relationship between the specific requirements of Rule 651(c) and the more general requirement of reasonable assistance.

¶ 39　　There, the question before the supreme court was whether privately retained postconviction counsel must provide the same reasonable level of assistance required of appointed postconviction counsel. *Id.* ¶ 22. The question arose due to the fact that Rule 651(c) is not applicable to privately retained attorneys. See *id.* ¶ 35 (citing *People v. Csaszar*, 2013 IL App (1st) 100467).

¶ 40　　The defendant in *Cotto* filed a postconviction petition through privately retained counsel. *Id.* ¶ 8. The trial court advanced the petition to the second stage, and the State filed a motion to dismiss. Among other things, the State argued that the petition was not timely and did not allege facts establishing that the untimeliness was not due to the defendant's culpable negligence. *Id.* ¶ 12. The court dismissed the defendant's petition after a hearing on the State's motion. *Id.* ¶ 14.

¶ 41　　The defendant appealed, arguing that his attorney did not provide him with reasonable assistance, as required under the Post-Conviction Hearing Act. *Id.* ¶ 15. The First District held that

11

the requirement of reasonable assistance applies only to appointed postconviction counsel, not to retained counsel. *Id.* ¶ 16. In reaching this conclusion, the court relied on its prior decision in *People v. Csaszar*. *Id.* (citing *People v. Cotto*, 2015 IL App (1st) 123489, ¶ 10, citing *Csaszar*, 2013 IL App (1st) 100467, ¶¶ 18, 25). The *Csaszar* court found the reasonable assistance standard inapplicable to privately retained postconviction counsel because Rule 651(c) applies only to appointed counsel, not to privately retained counsel. *Id.* ¶ 35 (citing *Csaszar*, 2013 IL App (1st) 100467, ¶ 16).

¶ 42    The supreme court reached the opposite conclusion. The court explained:

"Although Rule 651(c) applies only to a postconviction petition initially filed by a *pro se* defendant [citation], this court has never conditioned the reasonable level of assistance standard on the applicability of that rule. Indeed, this court has treated the reasonable assistance standard as generally applying to all postconviction defendants without reference to Rule 651(c) or between retained or appointed counsel. [Citation.] Put another way, Rule 651(c) is merely a vehicle for ensuring a reasonable level of assistance [citation] and should not be viewed as the only guarantee of reasonable assistance in postconviction proceedings." (Internal quotation marks omitted.) *Id.* ¶ 41.

Thus, the requirement of reasonable assistance is not necessarily limited by Rule 651(c). See also *People v. Smith*, 2022 IL 126940, ¶ 38 (holding that the requirements of Rule 651(c) do not apply to an attorney appointed after the filing of an amended petition whose only role is to argue on the defendant's behalf at a hearing, but emphasizing that "if postconviction counsel performs unreasonably—even after a presumption arises that there has been compliance with Rule 651(c)," a claim that the defendant did not receive reasonable assistance would be viable); *People v. Pabello*, 2019 IL App (2d) 170867, ¶¶ 27-29, 35 (finding Rule 651(c) inapplicable to third stage

postconviction proceedings, but finding that the standard of reasonable assistance is applicable at all stages).

¶ 43    Under the circumstances of this case, however, we need not determine whether the defendant's attorneys' failure to attach documentary evidence in support of the additional claims fell short of the reasonable level of assistance required by the Post-Conviction Hearing Act unless we find that the lack of documentation precluded the postconviction court from considering the defendant's claims on their merits. Where postconviction counsel fails to comply with the requirements of Rule 651(c), thereby preventing the circuit court from considering the merits of the defendant's claims, it is inappropriate to speculate as to how the postconviction court would have ruled if appointed counsel "had adequately performed his duties under Rule 651(c)." *People v. Turner*, 187 Ill. 2d 406, 415-16 (1999); *Wallace*, 2018 IL App (5th) 140385, ¶¶ 37-42. A different standard applies in cases such as this one where, even though the question is whether counsel has performed the duties imposed under Rule 651(c), the defendant asserts that counsel performed those duties "deficiently or otherwise failed to provide reasonable assistance." In such cases, the defendant must show that he was prejudiced as a result. *People v. Landa*, 2020 IL App (1st) 170851, ¶ 58. This is particularly true where the alleged shortcomings in counsel's performance do not preclude the court from considering the merits of the defendant's claims. In that regard, we again find *Cotto* instructive.

¶ 44    There, the defendant's primary argument concerning postconviction counsel's failure to provide reasonable assistance was that " 'the sheer inadequacy' of his postconviction counsel's explanation on the untimeliness of the petition" led to its dismissal. *Cotto*, 2016 IL 119006, ¶ 44. However, at the second stage hearing, the trial court considered "extensive arguments by both sides" on the merits of the defendant's claims (*id.* ¶ 48), and the court did not mention the issue of

13

untimeliness in its ruling (*id.* ¶¶ 44, 50). In rejecting the defendant's claim that he did not receive reasonable assistance from his attorney, the supreme court first detailed the substantial efforts the defendant's attorney had undertaken on his behalf. *Id.* ¶ 46. The court found that "counsel ably discharged his duties." *Id.* ¶ 50. Significantly for our purposes, the supreme court went on to emphasize that the "defendant's petition was not dismissed as untimely. The trial court reviewed defendant's claims on their merits with no mention of the petition's late filing." *Id.*

¶ 45 Here, similarly, the court held a hearing at which it considered substantive arguments from both parties on the merits of the defendant's assertions. In ruling from the bench, Judge Napp did not mention the lack of evidentiary support for the claims related to the defendant's mental health. Instead, her statements indicate that she considered the defendant's claims of ineffective assistance of plea counsel and rejected them on the merits. Specifically, her analysis focused on the requirement that a defendant raising a claim of ineffective assistance of plea counsel demonstrate prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984). To do so, the defendant must show that it would have been rational under the circumstances to reject the plea offer and insist on going to trial (*People v. Brown*, 2017 IL 121681, ¶ 40) or that there was a plausible defense he could have raised had the case gone to trial (*People v. Hall*, 217 Ill. 2d 324, 335-36 (2005)). The petition in this case was dismissed not because counsel failed to provide evidentiary support for the claims added by counsel. Rather, it was dismissed because Judge Napp found that even assuming the truth of the defendant's allegations, he could not meet this standard.

¶ 46 The record supports Judge Napp's conclusion. Pursuant to the plea deal, the State dropped a total of 10 charges and amended the charge of attempted murder to remove the allegation that the defendant personally discharged a firearm. Absent the plea agreement, the defendant faced a possible sentence of 31 years to life on the attempted murder charge alone as well as potential

sentences on a total of 10 other charges. Instead, he received a sentence of 18 years on this charge, and the remaining 10 charges were dropped. As Judge Napp observed at the second stage postconviction hearing, the plea agreement is evidence of "a pretty impressive negotiation" on the defendant's behalf by his plea attorney.

¶ 47    Crucially, no additional information or documentary evidence concerning the defendant's mental health would have changed this analysis. A finding of guilty but mentally ill would have obligated the Department of Corrections to periodically provide examinations of the defendant "concerning the nature, extent, continuance, and treatment" of his mental illnesses. 730 ILCS 5/5-2-6(b) (West 2012). However, it would not have had any impact at all on the sentence he received. *People v. Manning*, 371 Ill. App. 3d 457, 461 (2007). While it would have been preferable for the defendant's postconviction attorneys to have attached documentation in support of the claims they added in their amended petitions, their failure to do so did not prevent the court from considering and rejecting those claims on the merits. For these reasons, we reject the defendant's claim that he was denied reasonable assistance of postconviction counsel.

¶ 48                                III. CONCLUSION

¶ 49    For the foregoing reasons, we affirm the ruling of the trial court.


¶ 50    Affirmed.